No. 68,697

STATE OF KANSAS, *Appellee*, v. IRVIN TIMLEY, *Appellant*.

(875 P.2d 242)

Opinion filed May 27, 1994.

*Reid T. Nelson*, assistant appellate defender, argued the cause, and *Steven R. Zinn,* deputy appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with him on the briefs for appellant. Appellant filed a brief pro se.

*Mark T. Schoenhofer*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Irvin Timley, from his conviction of three counts of rape and four counts of aggravated criminal sodomy stemming from three separate in-

cidents involving three victims. Timley was charged in two separate complaints, and the cases were consolidated for trial. The Habitual Criminal Act was imposed, and Timley was sentenced to consecutive sentences of 45 years to life on each count.

Timley raises a number of issues. He alleges error in the instructions, violation of his right to a speedy trial, gender discrimination in striking two males by peremptory challenge, failure to cross-endorse witnesses, timeliness of notice to impose the Habitual Criminal Act, sufficiency of the evidence, and failure to exclude a juror who knew the trial judge.

There was no dispute at trial that sexual contact occurred between Timley and each of the victims. Timley admitted to penetration sufficient to support each of the charges. Timley's defense was that the alleged victims consented to the sexual activity. Timley contended that each alleged victim approached him and agreed that he would supply her with drugs and she would give him whatever sexual activity he wanted. He admitted to choking each victim and making threats, but he insisted that the choking was intended to be mutually stimulating and was only to enhance the sexual feeling. Each victim, on the other hand, testified that she never consented to sexual activity with Timley, nor did she consent to the choking. L.H. contended that she did not voluntarily get into Timley's car, but was knocked unconscious and awoke in the back seat of his car to discover that he was engaging in sexual activity with her. D.A. and T.S. each insisted that she accepted a ride from Timley and that rather than taking her where she requested, he began choking her and forced her into the back seat of his car to engage in sexual activity without her consent.

## I. INSTRUCTIONS

Timley contends the trial court erred in instructing the jury that it could find him guilty if it found that the sexual act was perpetrated by use of force or fear. He suggests that the instructions given by the trial court were improper because he may have been deprived of a unanimous verdict. He maintains that some members may have found that a victim was overcome by force while other members may have found that that victim was over-

come by fear and that if this did occur, the jury verdict would not be unanimous. Timley argues:

"The only way to assure jury unanimity in a multiple acts case is to require that either the state elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that they must all agree that the same underlying criminal act has been proved beyond a reasonable doubt."

Timley notes that his defense was that the sex was consensual and therefore the manner of perpetration is critical.

Timley cites without discussion or analysis *State v. Kitchen*, 110 Wash. 2d 403, 756 P.2d 105 (1988), for the proposition that the jury must agree that the same underlying criminal act has been proved beyond a reasonable doubt. In *Kitchen*, the appeals of several defendants were consolidated. The defendants had been charged with sex offenses, but the dates of the offenses had not been pinpointed. Rather, each victim had testified that on more than one occasion the defendant had engaged in activity which could support a finding of guilt. The court noted the rule that "[w]hen the prosecution presents evidence of several acts that could form the basis of one count charged, either the State must tell the jury which act to rely on in its deliberations or the court must instruct the jury to agree on a specific criminal act." 110 Wash. 2d at 409.

Timley characterizes his case as a "multiple acts" case. What he ignores is the distinction made by the *Kitchen* court between alternative means cases and multiple acts cases. That court stated:

"In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.] In reviewing an alternative means case, the court must determine whether a rational trier of fact *could* have found each means of committing the crime proved beyond a reasonable doubt. [Citations omitted.]

"In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal

act has been proved beyond a reasonable doubt. [Citations omitted.]" 110 Wash. 2d at 410. (Emphasis in original.)

This court has also recognized and discussed the alternative means rule. The rule is stated in *State v. Grissom*, 251 Kan. 851, Syl. ¶ 7, 840 P.2d 1142 (1992):

"If an accused is charged in one count of an information with both premeditated murder and felony murder, it matters not whether some members of the jury arrive at a verdict of guilt based on proof of premeditation while others arrive at a verdict of guilt by reason of the killer's malignant purpose. Furthermore, the State is not required to elect between premeditated and felony murder because K.S.A. 21-3401 established the single offense of murder in the first degree and only provides alternative methods of proving the crime."

In his appellate brief, Timley's counsel readily points out that there was evidence from which the jury could determine that each sexual act was the result either of force, based on Timley's choking the victims, or of fear, based on the threats Timley made to the victims. There was sufficient evidence, viewed in the light most favorable to the prosecution, that a rational factfinder could have found Timley guilty beyond a reasonable doubt of the crimes of rape and aggravated criminal sodomy either by the means of force or by the means of fear. There was no error in including both alternative means in one instruction to the jury.

## II. SPEEDY TRIAL

Timley next contends that his statutory right to speedy trial was violated. He maintains that he was incarcerated for 130 days on case No. 91 CR 2101 and for 94 days on case No. 92 CR 17, both of which are in excess of the 90-day limit set forth in K.S.A. 22-3402.

K.S.A. 22-3402(1) provides:

"If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)."

Timley argues that continuances from February 10, 1992, to March 30, 1992, and from April 6, 1992, to May 11, 1992, were

improperly charged to him. He insists that the continuances were not his "fault" but rather were due to his court-appointed counsel withdrawing from representation. Timley also argues that the court erred in refusing to hear evidence on the April 6, 1992, delay, maintaining that had the February 10 delay been properly charged to the State, whether the April 6 delay was charged to the defendant would have been significant. Finally, Timley argues that the trial court erred in accepting the State's argument that Timley was not being held in jail solely on these two charges and therefore K.S.A. 22-3402 did not even apply. Timley contends that K.S.A. 22-3402 does apply and that because the delay was not his fault, his right to a speedy trial as set forth in this statute was violated. This contention is without merit.

Timley notes the following breakdown of continuances in this case:

"The evidence presented at the hearing on this motion shows the following:
91 CR 2101:

| | |
|---|---|
| 1-2-92 | Defendant was arraigned |
| 2-10-92 | Computer docket shows trial was continued and the delay was charged to the defense |
| 3-30-92 | State requests continuance |
| 4-6-92 | Continuance by defense |
| 5-11-92 | Trial |

92 CR 27 [sic]:

| | |
|---|---|
| 2-7-92 | Defendant arraigned |
| 3-30-92 | State continues case |
| 4-6-92 | Defense continues case |
| 5-11-92 | Trial" |

In denying Timley's motion for dismissal on speedy trial grounds, the court stated:

"Let's talk about that continuance from the 10th to the—of February to the 30th of March 'cause that's when Mr. Greeno got out. Actually, Mr. Greeno got out before that, but I can't tell. We're so slipshod in our method of handling replacements that I can't really tell from court files when Mr. Pullman entered his appearance. I know he was in 92 CR 17 as of the 27th of January, and I suspect probably goes to arraignment—I mean, to first appearance, but let me look and see. No. First appearance on the 3rd of January, public defender was appointed. 13th of January, motion to consolidate was filed by Miss Parker. That went to Mr. Lewis, who was the public defender assigned to the case. Oh, here

we go. January—under form letter dated January 22nd, 1992, Judge Clark advised Mr. Pullman that he'd been appointed in 91 CR 2101, 92 CR 17 and 91 TR 18132 [not a case on appeal]. So sometime after the 22nd of January—well, then, on the 27th of January, the order appointing counsel was filed. Okay. Mr. Martin, I think your client's on the hook for all those 49 days in 91 CR 2101, and I think he's on the hook for those days in 92 CR 17. 92 CR 17, that takes care of the statutory problem. How many days did you say it is in the '91 case? We got January the 2nd arraignment, so we got 29 days in January, 29 days in February, 31 days in March, 30 days in April, and 8 days in May. If my math is correct, charging 49 days to Mr. Timley puts us within the statutory speedy trial guidelines in 91 CR 2101 as well. I think also, as a matter of law, if Mr. Timley was on a probation or parole that was revoked in the traffic case, Ms. Barnett's correct, that as a matter of law—that's a little hypertechnical, I think, certainly is not the spirit of the statute but I'll find that the 49 days from February 10th to March the 30th are chargeable to Mr. Timley because of some problem with the public—within the Public Defender's office and those dates are chargeable—those 49 days are chargeable to him."

The court declined to hear evidence or make a ruling on the April 6 continuance.

Timley's argument that the trial court erred in accepting the State's argument that he was not being held solely on these two cases and therefore K.S.A. 22-3402 did not apply is meritless. The record does not show that the trial court actually accepted the State's argument that K.S.A. 22-3402 did not apply.

K.S.A. 22-3402 provides that the 90-day speedy trial deadline applies only if the defendant is being held "solely" due to the pending charges in which he or she claims a violation. Counsel for the State argued:

"But I would first indicate to the court that the defendant had a traffic PV served on him, I believe it was January 9th of 1992, in 91 TR 18132. So first my argument would be he has not been serving time solely by reason of the charges in this consolidated case. So I would argue that the 90 days, first of all, doesn't apply because he's being held for another reason."

Timley accurately points out that there is no evidence in the record as to how much time, if any, he may have been serving on the traffic case.

However, the record does not show that the district court relied on the State's argument in denying Timley's motion for discharge. The district court stated, "I think also, as a matter of law, *if* Mr. Timley was on a probation or parole that was revoked in the traffic

case, Ms. Barnett's correct, that as a matter of law—that's a little hypertechnical, I think, certainly is not the spirit of the statute . . . ." (Emphasis added.) This statement by the court shows that the district court did not actually find that Timley was incarcerated for a reason other than the instant offenses. The basis for the court's ruling was its determination that the 49 days from February 10, 1992, to March 30, 1992, were properly chargeable to Timley.

Timley also argues that the district court erred in declining to hear evidence concerning the April 6 delay. Timley notes that the court refused this evidence because it found that the February 10 continuance was charged to the defendant. Had that February 10 delay not been charged to Timley, as he argues it should not have been, then whether the April 6 delay was charged to the defendant or to the State would have been significant to the 90-day calculation. Therefore, Timley argues, the trial court should have accepted evidence on the April 6 delay.

The February 10 to March 30 delay was properly charged to the defendant; therefore, the trial court did not err in refusing to hear evidence on the April 6 delay because even if that delay was charged to the State, there was no violation of the 90-day deadline in either case.

The April 6 delay was caused when Timley's counsel had to withdraw due to a conflict. At the May 8 hearing on Timley's motion to discharge, Mr. Martin indicated that in early March, Timley approached the police to offer information about another individual in exchange for a plea agreement on these offenses. The officer indicated that he would speak with the prosecutor, but Timley heard nothing more until April 6, when he was ready for trial. At that time, the State proposed a plea agreement. When defense counsel Terry Pullman discovered that he represented the individual concerning whom Timley had offered to provide information, Mr. Pullman requested to withdraw from the case. It is unclear as to when the police informed the State of Timley's proposal, and it is also unclear as to whether the State was aware that Mr. Pullman also represented the individual concerning whom Timley proposed to provide information. Timley's position

with regard to the April 6 continuance appears to be that it should be charged to the State because the State failed to notify Mr. Pullman of the conflict he would have. This position, however, ignores that it was Timley himself who approached the police to provide the information and that Timley failed to inform his counsel of his discussion with the police, and thus the delay is his fault.

The February 10 continuance was properly charged to Timley. The trial court found that the February 10 to March 30 delay was caused because of a problem in the public defender's office. Timley's counsel has consistently noted that the continuance was granted because of the change in counsel representing Timley. Whether Timley himself wanted this continuance is irrelevant; what matters is that a continuance was sought on Timley's behalf to permit his new counsel additional time to prepare for trial.

K.S.A. 22-3402 states that a delay shall not count toward the 90-day speedy trial calculation if the delay arises due to the "application or fault" of the defendant. Counsel's reliance on the dictionary definition of "fault" ignores the language of the statute concerning "application" by the defendant. Regardless of whether it was Timley's "fault" that his attorney had to withdraw from representation, the continuance was granted at the "application" of the defendant.

Timley's counsel cites three cases, *State v. Ward*, 227 Kan. 663, 608 P.2d 1351 (1980); *State v. Welch*, 212 Kan. 180, 509 P.2d 1125 (1973); *State v. Matson*, 14 Kan. App. 2d 632, 798 P.2d 488 (1990), *rev. denied* 249 Kan. 777 (1991), in which continuances were properly charged to the defendants when counsel withdrew from representation. Counsel attempts to distinguish those cases by noting that in those cases counsel withdrew because of a defendant's fault or lack of cooperation. Appellant's brief states that in *Welch* the reason for counsel's withdrawal was not clear but in *Ward* and *Matson* defense counsel withdrew "because of defendant's interference with the direction of the defense" and "because of breakdown of communication and no attorney fees were paid."

The distinction counsel makes concerning *Welch* is inaccurate. The facts there do show the reason counsel withdrew from rep-

resentation. There, a continuance was granted on the day of trial, when defense counsel requested leave to withdraw because of a schedule conflict. The trial court permitted the withdrawal and immediately appointed an attorney who was representing the defendant on another case. However, the trial court "continued the case to allow new counsel time to confer with the defendant." 212 Kan. at 182. This court held that that continuance was properly charged to the defendant. 212 Kan. at 185.

The distinctions counsel makes concerning *Ward* and *Matson* are equally unpersuasive. In *Ward*, two court-appointed attorneys were permitted to withdraw over the defendant's objection. A third court-appointed attorney sought and was granted several continuances, although the defendant objected to most of those continuances. The defendant argued that because he objected to the withdrawal of counsel and to the continuances, those delays should not be charged to him. This court rejected that argument in part, as counsel states here, because counsel withdrew due to the defendant's lack of cooperation. This court noted that by electing to exercise the right to appointed counsel, the defendant could not also assert pro se representation. 227 Kan. at 666. This court stated, "All of the delays except one are the result of the application of the defendant through his attorney or the fault of the defendant himself." 227 Kan. at 667. By so stating, this court distinguished the two bases for charging a continuance to the defendant, holding that a continuance is properly charged to the defendant if it is either the result of the application of the defendant or if it is the result of the fault of the defendant.

In *Matson* the delay does appear to have been in part because of counsel withdrawing due to a breakdown in communication, as counsel notes here. 14 Kan. App. 2d at 636. However, once new counsel was appointed, another continuance was granted when the court noted that the defendant had failed to keep in communication with his attorney. The *Matson* court stated:

"Although defendant's counsel objected to the continuance, it is obvious that it would have been error for the court to insist upon proceeding with the trial of defendant . . . as scheduled, when defendant's counsel had not yet been able to consult with his client. The trial, in addition to being continued to allow

defense counsel to file motions, was clearly continued for defendant's benefit to allow him to meet with his counsel and prepare for trial." 14 Kan. App. 2d at 637.

Here, the February 10 continuance was due to new counsel having been appointed for Timley after his former counsel was permitted to withdraw due to a conflict. The ethical rule prohibiting an attorney from representing a client when there is a conflict of interest is for the benefit of the client. A continuance to allow newly appointed counsel adequate time to prepare for trial is also for the benefit of the defendant. As the court stated in *Matson*, it would have been improper had the trial court required Timley to proceed with trial on February 10, 1992, when his recently appointed counsel had not had adequate time to prepare. Therefore, this continuance was properly charged to Timley.

There was no violation of the statutory speedy trial right.

## III. GENDER BIAS

Timley contends that the State should not have been permitted to use two of its peremptory challenges to exclude males from the jury. He argues that the rule set forth in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), prohibiting the discriminatory exclusion of jurors on the basis of race, should be extended to prohibit the exclusion of jurors on the basis of gender.

After the jury was selected but before it was sworn, Timley's counsel stated, "There's a motion we'd like to make at the appropriate time out of the hearing of the jury." After the jury was sworn but before trial began, Timley's trial counsel argued that the State exercised its peremptory challenges to exclude two of the three men that were seated on the jury panel, resulting in only one male sitting on the final jury panel. Counsel argued:

"I do believe and Mr. Timley believes that this is an issue which is going to have some predisposition by sex and, that is, I think women are gonna be more offended or more abhorred by this particular crime, that men are the ones that are gonna be wrongfully accused if ever in the past, and I believe it works to Mr. Timley's detriment to have the panel as it's made up, and we object to the panel for those reasons."

The trial court found that "the makeup of the panel is not the product of anything the State has done. That it's just happenstance." The court then denied Timley's motion, stating, "I'll deny the motion, and I am treating it as a *Batson* motion based upon the sexual makeup of the jury."

In his motion to arrest judgment, Timley further argued this issue, contending that the State "used its preemptory [*sic*] challenges in an impermisible [*sic*], unconstitutional and discriminatory manner to excuse both males, one of whom was the only black person in the pannel [*sic*], from the twelve prospective jurors originally seated for voir dire." The motion further argued that the jury pool array summoned was not representative of the community.

At the June 2, 1992, hearing on this motion, counsel argued:

"[T]he composition of the jury was not a representative cross-section of the community nor a fair jury of Mr. Timley's peers. There were only three males that were ever called on the panel. Two of them were excused by the State. We think that's also a *Batson* type challenge, to eliminate at least enough males from the jury that they could have any kind of significant influence. That it's particularly harmful in a case of this nature to have an overrepresentation of females on the jury."

The hearing continued:

"[MR. MARTIN (Timley's trial counsel)]: The other thing I failed to mention is that, in attacking the array of the jury panel, there was only one black person that was in the—ever called to the panel and I don't know if the court makes notes or not. I don't—I'm not positive. I don't think there were any other black prospective members.

"THE COURT: There was one that we would not have reached her.

"MR. MARTIN: Okay. And the one black person was also struck by the State.

"THE COURT: Well, that's not true. You misspoke yourself. The one black person was struck by you. That was the gentleman in seat number 12 . . . .

"MR. MARTIN: I'm not sure. That's my recollection. If I'm wrong, I'm sure the record will correct me.

"THE COURT: The record will reflect that one of us is wrong and the record will reflect which one it is.

"MR. MARTIN: He was in the right rear corner. I think we agree where he sat."

The court then denied Timley's motion to arrest judgment.

The transcript of voir dire shows that two men were in the original pool of 12 prospective jurors seated: juror number 5, Mr. K.A.; and juror number 12, Mr. T.A.S. Mr. K.A. and a female juror were excused when the parties exercised their first peremptory challenge. Mr. K.A., on voir dire, stated he had been wrongly convicted of assault in city court and had to appeal before the case was dismissed. He said he had to spend all his savings and that the experience had left him bitter. He also had to attend an out-of-state meeting the following week which would cause him problems if the trial went into the following week (which was a possibility). The trial judge did not dismiss the juror for cause. Mr. T.A.S. and a female juror (whom both parties had attempted to remove for cause) were excused when the parties exercised their second peremptory challenge. Mr. T.A.S. is black. The appellant makes no claim based on race, which is consistent with the appellant rather than the State having struck Mr. T.A.S. Mr. T.A.S.'s voir dire testimony was such that the appellant would have been motivated to strike him from the panel (however, so would the State). Clearly as to Mr. T.A.S., racial- and gender-neutral reasons existed for either party to strike him.

The record does not reflect which party excused which juror at the time the parties exercised their peremptory challenges. The exchange between Timley's counsel and the district court, quoted above, indicates that there is some dispute about which party excused which juror. The record does not clarify this dispute, despite the fact that both defense counsel and the court were certain the record would clarify it.

In its brief, the State does not suggest that it did not exclude both male jurors as the defendant contends. Further, when defense counsel objected to the jury panel immediately prior to trial for the reason that the State excused the only two men initially seated on the jury, the trial court did not suggest that defense counsel himself had in fact excused one of the male jurors.

Argument by the parties in the appellate briefs focuses on whether the United States Supreme Court holding in *Batson v. Kentucky*, 476 U.S. 79, prohibiting the discriminatory exclusion of jurors on the basis of race, should be extended to prohibit the

exclusion of jurors on the basis of gender. We conclude that for purposes of appeal of this issue, the State struck both Mr. K.A. and Mr. T.A.S.

In *Batson*, a jury consisting of only white people was seated after the prosecutor used peremptory challenges to strike the four black people on the venire. The defendant moved to discharge the jury before it was sworn. The Supreme Court stated:

"[A] defendant has no right to a 'petit jury composed in whole or in part of persons of his own race.' [Citation omitted.] . . . But the defendant does have the right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria. [Citations omitted.] The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, [citation omitted], or on the false assumption that members of his race as a group are not qualified to serve as jurors [citations omitted].

"Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure. . . .

"Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try. Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at trial. [Citation omitted.] A person's race simply 'is unrelated to his fitness as a juror.' [Citation omitted.] . . .

· "The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. [Citations omitted.] Discrimination within the judicial system is most pernicious because it is 'a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others.' [Citation omitted.]" 476 U.S. at 85-88.

The Court further stated:

"[T]he Court has found a denial of equal protection where the procedures implementing a neutral statute operated to exclude persons from the venire on racial grounds, and has made clear that the Constitution prohibits all forms of purposeful racial discrimination in selection of jurors. While decisions of this Court have been concerned largely with discrimination during selection of the venire, the principles announced there also forbid discrimination on account of race in selection of the petit jury. Since the Fourteenth Amendment protects an accused throughout the proceedings bringing him to justice, [citation omitted], the State may not draw up its jury lists pursuant to neutral procedures

but then resort to discrimination at 'other stages in the selection process' [citations omitted].

". . . [Thus, a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried, [citation omitted], the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 88-89.

The *Batson* Court placed the burden on the defendant to prove the existence of purposeful discrimination in the selection of jurors. The defendant must make a prima facie showing that establishes an inference of discriminatory motive. The Court set forth a three-part test by which the defendant may make the prima facie showing of discriminatory purpose: First, the defendant must establish that he or she is a member of a cognizable racial group and that members of that group have been excluded by the State; second, the defendant may rely on the fact that the use of peremptory challenges permits "those to discriminate who are of a mind to discriminate"; and third, the defendant must show that the totality of these and other facts and circumstances raise an inference that jurors were excluded because of their race. 476 U.S. at 96. The Court expressed:

"In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." 476 U.S. at 96-97.

Upon the requisite prima facie showing, the burden then shifts to the State to present a neutral explanation for using peremptory challenges to exclude black jurors. The trial court then determines if the defendant has established purposeful discrimination in the jury selection process. 476 U.S. at 97-98.

This court applied *Batson* in *State v. Hood*, 242 Kan. 115, 744 P.2d 816 (1987). In *State v. Sledd*, 250 Kan. 15, 20, 825 P.2d

114, *cert. denied* ___ U.S. ___, 121 L. Ed. 2d 98 (1992), this court expanded on the *Batson* analysis and noted language in Justice White's concurrence: "The Court emphasizes that using peremptory challenges to strike blacks does not end the inquiry; it is not unconstitutional, without more, to strike one or more blacks from the jury. The judge may not require the prosecutor to respond at all." 476 U.S. at 101. This court went on to note that "appellate review of a trial court's determination whether or not a prima facie showing has been made is plenary as it involves a question of legal sufficiency." *Sledd*, 250 Kan. at 21. However, this standard of appellate review of "a trial court's finding that the State has expressed racially neutral reasons is that of abuse of discretion." 250 Kan. at 21.

The holding in *Batson* has been extended to permit a white defendant to challenge a prosecutor's peremptory challenges based on racial grounds, *Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991); to civil cases, *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 114 L. Ed 2d 660, 111 S. Ct. 2077 (1991); and to a criminal defendant's use of peremptory challenges, *Georgia v. McCollum*, 505 U.S. 42, 120 L. Ed 2d 33, 112 S. Ct. 2348 (1992). The United States Supreme Court has now addressed whether *Batson* should be extended to include discrimination based on gender, *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. ___, 128 L. Ed. 2d 89, 114 S. Ct. 1419 (1994). We gave the parties to this appeal an opportunity to respond to *J.E.B.*, and they have done so.

*J.E.B.* extends *Batson* to gender discrimination (both men and women) and holds that a litigant may not strike potential jurors solely on the basis of gender. In *J.E.B.*, as in this case, the complained-of conduct was in striking male members of the panel. *J.E.B.* applies to this case, and as *J.E.B.* adopts *Batson's* reasoning and requirements we will cite to *Batson*.

The trial court did treat this as a *Batson* motion based upon the sexual makeup of the jury and denied Timley's motion to discharge the jury. This indicates that the trial court found that Timley had failed to make a prima facie showing of gender discrimination. Of course, "appellate review of a trial court's deter-

mination whether or not a prima facie showing has been made is plenary as it involves a question of legal sufficiency." *Sledd*, 250 Kan. at 21.

Timley contends that he did make such a showing when he objected to the removal of two males from the jury. However, more than a mere objection is required. *Batson* requires the court to look at the relevant facts and circumstances of the case in determining whether a prima facie showing has been made. *Batson*, 476 U.S. at 96-98. In making his motion, Timley's counsel merely stated that the gender makeup of the jury worked to Timley's detriment. While the gender makeup of a jury may play some role in sexual assault cases, that possibility does not in and of itself mandate a finding that where significantly more jurors are of one gender than another, gender discrimination must have been employed.

Rather, *Batson* clearly refers to a trial judge's experience in supervising voir dire and to the trial judge's position to observe "the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges." 476 U.S. at 97. A review of the transcript of voir dire indicates that Timley failed to make a prima facie showing of gender discrimination because the circumstances do not raise an inference that the State's exercise of its peremptory challenges were gender motivated.

The transcript shows that questioning of Mr. K.A. was comparable by both parties. Mr. K.A. admitted upon questioning by the State that he had been previously charged with assault and that after he was sentenced he appealed and the charges were finally dismissed. He noted that he was bitter about the situation. He also had an availability problem due to the anticipated length of the trial.

Mr. T.A.S. was questioned extensively by both parties. He gave equivocal answers as to whether he would follow the instructions given by the court if he disagreed with any of them and as to whether he would hold the State to a burden of proof higher than beyond a reasonable doubt. He also interrupted defense counsel from time to time to give his view on what questions meant and how they should be asked.

The exchanges between counsel for the State and Mr. K.A. and Mr. T.A.S. do not show a gender-motivated reason for exercising peremptory challenges to excuse these jurors. The transcript of voir dire suggests valid reasons, other than gender, to justify either party excusing both Mr. K.A. and Mr. T.A.S. Timley failed to make a prima facie showing of gender discrimination, and the trial court did not err in so holding.

The contention that the jury pool called did not constitute a representative cross-section of the community must also fail. This court has previously upheld Sedgwick County's method of selecting jury panels by using voter registration lists. *State v. Bailey*, 251 Kan. 156, 834 P.2d 342 (1992). Timley has brought forth no new argument on this issue. Further, K.S.A. 22-3407 requires that any objection to the manner of selecting a jury panel must be made by a written motion to discharge the panel at least five days prior to the trial date if the names and addresses of the panel members are known, or prior to the time the jury is sworn if the names and addresses are not known; the court may entertain the motion any time thereafter for good cause shown. Timley's counsel made no such motion.

## IV. CROSS-ENDORSEMENT

Timley next complains that witnesses were permitted to testify in both cases, although they were only endorsed as to one case, and that each victim was permitted to testify as to the other victims' cases absent a K.S.A. 60-455 determination. The State does not respond to these arguments.

K.S.A. 22-3203 provides that two or more separate cases may be consolidated for trial if the crimes could have been properly joined in the same complaint or information. One basis for joining crimes in the same complaint or information is that the crimes are of the same or similar character. K.S.A. 22-3202(1). "Within established guidelines, the decision to consolidate rests within the sound discretion of the trial court and its holding will not be disturbed on appeal, absent a clear showing of abuse in the exercise of that power of discretion." *State v. Bagby*, 231 Kan. 176, Syl. ¶ 3, 642 P.2d 993 (1982). Timley does not specifically chal-

lenge the propriety of consolidating these offenses for trial, and consolidation was proper under K.S.A. 22-3202 and K.S.A. 22-3203.

K.S.A. 1993 Supp. 22-3201 states:

"(g) The prosecuting attorney shall endorse the names of all witnesses known to the prosecuting attorney upon the complaint, information and indictment at the time of filing it. The prosecuting attorney may endorse on it the names of other witnesses that may afterward become known to the prosecuting attorney, at times that the court may by rule or otherwise prescribe."

Timley argues that some witnesses were endorsed in only one of the two cases consolidated for trial and that permitting the testimony to be considered by the jurors as to both cases was error.

Timley contends that K.S.A. 60-455 precludes a witness endorsed to testify in one proceeding of a hearing from testifying in another proceeding unless endorsed by the court to testify in all proceedings, even if the cases are alike in nature. In fact, K.S.A. 60-455 has nothing to do with the endorsement of witnesses but, rather, concerns the admissibility of evidence of prior crimes or wrongs.

In addressing the late endorsement of witnesses, this court has repeatedly refused to overturn the decision of the trial court unless the rights of the defendant were prejudiced. See, *e.g.*, *State v. Green*, 252 Kan. 548, 553-54, 847 P.2d 1208 (1993); *State v. Hartfield*, 245 Kan. 431, 440, 781 P.2d 1050 (1989). "The purpose of the endorsement requirement is to prevent surprise to the defendant and to give the defendant an opportunity to interview and examine the witnesses for the prosecution in advance of trial." *Green*, 252 Kan. at 553.

Timley's trial counsel was aware well before trial that the cases were consolidated for trial and what witnesses might be called by the prosecution to testify at the consolidated trial. Timley's counsel had an opportunity to interview and examine the witnesses in advance of trial. Timley has failed to establish that his rights were prejudiced by permitting the witnesses to testify even though they were not cross-endorsed. There was no error here in permitting the witnesses which were endorsed in one case to testify in the

other case, despite the fact they were not endorsed as witnesses in the other case.

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The trial judge denied defense counsel's request for a limiting instruction concerning the testimony of L.H. based on K.S.A. 60-455.

As stated above, these offenses were properly consolidated for trial. The testimony by one victim was clearly admissible for proving the offenses against that victim. At the conference on jury instructions, Timley's counsel did not renew his request for a limiting instruction concerning L.H.'s testimony.

It is well established that in determining the admissibility of prior crimes under K.S.A. 60-455, the trial court must determine that the evidence is relevant to prove a disputed material fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident and must weigh the probative value of the evidence against its potential to prejudice the jury. See *State v. Mason*, 250 Kan. 393, 404, 827 P.2d 748 (1992); *State v. Breazeale*, 238 Kan. 714, 719, 714 P.2d 1356, *cert. denied* 479 U.S. 846 (1986).

Evidence of each crime was relevant to prove multiple disputed material facts. Each of the offenses charged was committed in an identical manner, with Timley driving late at night, offering a ride to a woman who was walking alone, and engaging in sexual activity with and choking and threatening the woman. Although the identity of the defendant was ultimately not an issue based on Timley's own testimony, at the time each victim testified it was unknown whether Timley would testify, so identity was a contested issue at the time each victim testified. There was no error in admitting evidence of the crimes charged against Timley with respect to each victim at the consolidated trial.

## V. HABITUAL CRIMINAL ACT

In his pro se supplemental brief, Timley also contends that he was not given prior notice of the State's intent to invoke the Habitual Criminal Act. He argues that he must be given prior notice and a hearing held before the Habitual Criminal Act can be invoked. Timley equates his situation with the requirement that the State give notice of its intent to seek the "hard 40" sentence without parole, citing *State v. Deavers*, 252 Kan. 149, 843 P.2d 695 (1992), and with the situation where a person charged as a recidivist is entitled to be informed by either indictment or information that he is being charged as such, citing 39 Am. Jur. 2d, Indictment and Information. Timley makes no argument that the evidence was insufficient to support imposition of the Habitual Criminal Act.

The State filed a motion to impose the Habitual Criminal Act in both cases on April 13, 1992, alleging that Timley had been previously convicted of robbery in Wyandotte County and of aggravated robbery in two cases in Sedgwick County. The motion certified that a copy was hand-delivered to Timley on April 6, 1992.

At the June 2, 1992, hearing on the motion to invoke the Habitual Criminal Act, Timley's trial counsel informed the court that "Mr. Timley advises me he's never been served that motion. I don't know what the requirements are but it was in the court file at a time prior to my entering the case. Mr. Timley advises me he's never been served." However, Sedgwick County Assistant District Attorney Kim Parker testified that she personally served Timley with a copy of the motion on April 6, 1992, while she was sitting across the table from Timley and his then-counsel Terry Pullman in the library. This testimony was not contradicted.

Timley's reliance on *Deavers* suggests that he may be arguing that the notice should have been given to him at the time of his arraignment. Timley's reliance on *Deavers* is misplaced. That case was decided solely on the language of K.S.A. 1991 Supp. 21-4624, which mandates that when the State intends to seek the "hard 40" sentence for first-degree murder, it must give notice to the

defendant at the time of arraignment. The statute provides that the consequence of noncompliance with the notice provision is that the "hard 40" sentence cannot be imposed. K.S.A. 1993 Supp. 21-4504 has no requirement comparable to 21-4624 mandating that the State give notice at the time of arraignment of its intent to invoke the Habitual Criminal Act.

"The state is not required to give an accused notice of its intention to invoke the habitual criminal act prior to trial or prior to submission of a case to a jury. Reasonable notice is all that is required." *State v. Powell,* 220 Kan. 168, Syl. ¶ 9, 551 P.2d 902 (1976). See *State v. Myers,* 215 Kan. 600, 605, 527 P.2d 1053 (1974); *Wasson v. State,* 210 Kan. 205, Syl. ¶ 1, 499 P.2d 1128 (1972). "The purpose of requiring such notice is to afford the defendant time to prepare his defense and show cause why the act should not be invoked [citation omitted]." *Myers,* 215 Kan. at 605. See *Powell,* 220 Kan. at 176; *Wasson,* 210 Kan. at 206-07.

Timley was given a copy of the State's motion to impose the Habitual Criminal Act on April 6, 1992, more than a month before trial and nearly two months before the hearing on the motion and Timley's sentencing. Notice at such time was reasonable, and the State was not required to give such notice any earlier.

## VI. SUFFICIENCY OF EVIDENCE

Timley also argues pro se that the evidence was insufficient to support his convictions. He asserts that the prosecutor withheld evidence and that because the jury was biased, prejudiced, all white, and mostly female it could not help but convict him. The appellate defender did not address this issue in its supplemental brief, and the State does not respond to this issue in its brief.

There is nothing in the record to show that the prosecutor withheld evidence.

This court has addressed insufficient evidence claims on numerous occasions.

"If the sufficiency of evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational

factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Grissom*, 251 Kan. 851, Syl. ¶ 4, 840 P.2d 1142 (1992).

See *State v. Getz*, 250 Kan. 560, 830 P.2d 5 (1992).

Each victim testified that she did not consent to the sexual activity and that Timley choked and threatened her. This testimony did conflict with Timley's testimony that the sexual activity was consensual. "It is the jury's function, and not an appellate court's, to weigh the evidence and pass upon the credibility of witnesses." *State v. Holley*, 238 Kan. 501, 511, 712 P.2d 1214 (1986). There was sufficient evidence here from which a rational factfinder could have found Timley guilty of all charges beyond a reasonable doubt.

## VII. JUDGE ACQUAINTED WITH JUROR

For his final issue, Timley contends that the trial judge noted the judge's personal relationship with a juror and that this juror should not have been permitted to remain on the jury.

During voir dire, the following exchange occurred:

"THE COURT: Okay. Thank you. Next prospective juror is Ms. Susan Green. Ms. Green is an accountant. And I'm sorry, Susan, I've forgotten who you're employed by.

"MS. GREEN: CCP, Computax.

"THE COURT: Thank you. And we've known one another, let's say, a couple of years. You're a friend of my wife's.

"MS. GREEN: Right.

"THE COURT: And is there anything about that that would keep you from serving on this jury as a fair and impartial juror?

"MS. GREEN: No.

"THE COURT: You would not hold that against the State and you would not hold that against Mr. Timley?

"MS. GREEN: No."

Neither the State nor Timley's trial counsel further questioned this juror concerning her acquaintance with the trial judge.

The record does not show that this issue was presented to the trial court. "The defendant cannot raise points on appeal which were not presented to the trial court." *Holley*, 238 Kan. at 508.

Even if Timley had raised this issue below, it has no merit. This juror affirmatively stated that her personal acquaintance with the trial judge would not affect her ability to be fair and impartial.

Had the defendant objected, there would have been no error in not excluding her from the jury.

Affirmed.