(287 P.3d 943)
No. 105,917

STATE OF KANSAS, *Appellee*, v. ROBERT E. SNOVER, *Appellant*.

Opinion filed November 9, 2012.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Heather R. Jones*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., BUSER and LEBEN, JJ.

GREEN, J.: Robert E. Snover appeals from his jury trial convictions of nonresidential burglary, theft, and criminal damage to property. On appeal, Snover makes the following arguments: (1) that the State failed to present sufficient evidence on each alternative means to support a unanimous jury decision for his criminal damage to property conviction; (2) that the State failed to present sufficient evidence on each alternative means to support a unanimous jury decision for his theft conviction; (3) that the trial court erred in instructing the jury that it could consider the "degree of certainty" demonstrated by the witness at the time she identified him; and (4) that the trial court unconstitutionally used his criminal history to increase his sentence without proving it to a jury. We

disagree with Snover's arguments. Accordingly, we affirm the judgment of the trial court.

On the night of January 29, 2010, and in the early morning hours of January 30, 2010, Snover, Joshua Slocum, and Doran Wormell drove to Pome on the Range, an orchard in Franklin County, Kansas. Once Slocum, Snover, and Wormell arrived at the orchard, they drove to a shed on the property. Because the shed was locked with a padlock, Slocum returned to his truck to retrieve a pair of bolt cutters. Once the three men were inside the shed, they took some items, placed them in Slocum's truck, and left.

Slocum, Snover, and Wormell took the items to Ottawa, Kansas, where they cleaned and refurbished them. Next, the three men went to Wormell's ex-girlfriend's residence to pick up a different vehicle. The men planned to use the vehicle to take some of the items to Quenemo, Kansas, to sell. On the way to Quenemo, the vehicle the three men were using broke down. Slocum then called his friend Desiree Blanton to pick them up. Once Blanton arrived, Wormell and Slocum left with Blanton while Snover stayed behind so he could try to fix the vehicle.

Later, the men's plan was discovered by law enforcement and Snover was arrested and charged with nonresidential burglary, theft, and criminal damage to property. At trial, Blanton testified that she recognized Snover as one of the men at the vehicle where she picked up Wormell and Slocum.

The jury found Snover guilty of nonresidential burglary, theft, and criminal damage to property. Snover received a controlling prison sentence of 29 months with 12 months of postrelease supervision.

*Did the Aiding and Abetting Instruction Given by the Trial Court Create an Alternative Means for Committing the Crime of Criminal Damage to Property?*

Snover first argues that his conviction for criminal damage to property must be reversed because the aiding and abetting instruction given at trial created alternative means, and the State had failed to present sufficient evidence that he acted as a principal. In particular, Snover maintains that "the State presented absolutely

no evidence to suggest that Mr. Snover intentionally . . . damaged, destroyed, or substantially impaired the use of the padlock himself."

Alternative means essentially entail materially different ways of committing a particular crime based on the statutory definition or elements of the offense. In an alternative means case, the State is not required to elect one means or another when presenting its case to the jury or when requesting jury instructions. *State v. Stevens*, 285 Kan. 307, 309, 172 P.3d 570 (2007). Nevertheless, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. *Wright*, 290 Kan. at 202. This safeguard prevents a jury, partially or wholly, from reaching a finding of guilt based on insufficient evidence. As a matter of law, when the State provides inadequate evidence for a reasonable factfinder to reach guilt through a certain means, a conviction must be reversed. *Wright*, 290 Kan. at 203.

Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means. *Wright*, 290 Kan. at 202 (quoting *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 [1994]). In reviewing an alternative means case, the court must determine if a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt. *Wright*, 290 Kan. at 202.

In a challenge to the sufficiency of the evidence, we are guided by the following standard of review:

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011).

Moreover, in determining if there is sufficient evidence to support a conviction, an appellate court generally will not reweigh the evidence or the credibility of witnesses. *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009). A guilty verdict will be reversed only in the rare case where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.3d 945 (1983).

The State's complaint/information charged Snover as follows:

"That on, about, or between 30th day of January, 2010 and the 31st day of January, 2010, in the County of Franklin, State of Kansas, ROBERT E. SNOVER did then and there unlawfully and intentionally by means other than fire or explosive, injure, damage, mutilate, deface, destroy, or substantially impair the use of property, to-wit: padlocks to the extent of less than $1,000.00, in which another person had an interest, to-wit: Mike Gerhardt (a.k.a. Leland Gerhardt), without the consent of such person or business, a class B non-person misdemeanor, in violation of K.S.A. 21-3720(a)(1) and K.S.A. 21-4502(1)(b)."

Accepting the earlier stated alternative means concepts, we first must determine if this case truly presents an alternative means issue. If the statute that penalizes criminal damage to property— K.S.A. 21-3720—does not provide for more than one way to commit the crime, jury unanimity is not at issue and alternative means analysis is inapplicable. This issue involves statutory interpretation. Interpretation of a statute is a question of law over which an appellate court has unlimited review. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

When Snover was charged, the crime of criminal damage to property was provided under K.S.A. 21-3720. In pertinent part, the statute states as follows:

"(a) Criminal damage to property is by means other than by fire or explosive:

(1) Intentionally injuring, damaging, mutilating, defacing, destroying, or substantially impairing the use of any property in which another has an interest without the consent of such other person; or

(2) injuring, damaging, mutilating, defacing, destroying, or substantially impairing the use of any property with intent to injure or defraud an insurer or lienholder."

The State charged Snover under K.S.A. 21-3720(a)(1) of the statute.

K.S.A. 21-3720 presents alternative means because it creates two or more ways of committing the crime of criminal damage to property. For instance, the statute describes markedly different acts: (1) criminal damage to property—without consent or (2) criminal damage to property—with intent to defraud an insurer or lienholder. Yet, Snover does not make an alternative means argument under these statutory examples. Instead, Snover argues that the

aiding and abetting instruction given at trial created an alternative means for committing the crime of criminal damage to property.

Yet, the aiding and abetting statute, K.S.A. 21-3205(1), does not define a separate crime: "A person is criminally responsible for a crime committed by another person if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime." See *State v. Robinson*, 293 Kan. 1002, 1038, Syl. ¶ 22, 270 P.3d 1183 (2012) ("Aiding and abetting is not a separate crime in Kansas."). As a result, K.S.A. 21-3205(1) merely "explains the circumstances under which a person may be criminally responsible for a crime committed by another person." *State v. Johnson*, 46 Kan. App. 2d 870, 885, 265 P.3d 585 (2011). Moreover, our Supreme Court explained the well-established rule that one who has been charged as a principal may be convicted on evidence showing that he or she has merely aided and abetted the commission of the offense:

"It is well settled that all participants in a crime are equally guilty without regard to the extent of their participation, and . . . any person who counsels, aids or abets in the commission of an offense may be charged, tried and convicted in the same manner as though he were a principal. [Citation omitted.]" *State v. Cunningham*, 236 Kan. 842, 846, 695 P.2d 1280 (1985).

Although this court in *State v. Boyd*, 46 Kan. App. 2d 945, 268 P.3d 1210 (2011), *petition for rev. filed* January 23, 2012, recently held that aiding and abetting creates an alternative means for committing the crime charged, we disagree. Here, Snover was charged with criminal damage to property as a principal. He was not charged as an aider and abettor. The trial court then instructed the jury on both principal liability and aider and abettor liability. Thus, the issue is not whether Snover committed the crime in a different way, *i.e.*, by aiding and abetting, but whether he committed the crime at all, albeit by participation.

In the absence of direct authority, we draw guidance from a decision by the Supreme Court of Washington—the same court our own Supreme Court relied on in *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 (1994), for the alternative means doctrine. In *State v. McDonald*, 138 Wash. 2d 680, 687, 981 P.2d 443 (1999), the Washington Supreme Court held "principal and accomplice

liability are not alternative means of committing a single offense." The court noted its own cases "have turned . . . upon alternative means of *principal* liability: for example, premeditated murder and felony murder as alternative means." 138 Wash. 2d at 687.

The Washington Supreme Court reasoned that extending the alternative means doctrine to "accomplice liability" would "contradict our holdings" concerning "the emptiness of any distinction between principal and accomplice liability." 138 Wash. 2d at 687-88. As one example of such holdings, the Washington Court had held: " '[A] verdict may be sustained upon evidence that the defendant participated . . . as an aider or abettor, even though he was not expressly accused of aiding and abetting and even though he was the only person charged in the information.' [Citation omitted.]" 138 Wash. 2d at 688.

The same could be said of Kansas Supreme Court precedent. Applying alternative means doctrine here contradicts the well-settled law of our Supreme Court regarding criminal liability. Consequently, we hold that the aiding and abetting statute, K.S.A. 21-3205(1), does not enumerate one or more ways of committing a single offense. Thus this statute does not create an alternative means for committing criminal damage to property. Moreover, we determine that the evidence of Snover's liability as an aider and abettor was sufficient to convict him for criminal damage to property.

*Does Kansas' Statutory Definition of "Obtaining" or "Exerting Control" Create Alternative Means for Committing the Crime of Theft?*

Next, Snover argues that K.S.A. 21-3701(a)(1) provides alternative means by which the crime of theft can occur. Specifically, Snover maintains that "[o]btaining unauthorized control over property and exerting unauthorized control over property constitute 'more than one way' to commit 'a single offense,' and thus constitute two alternative means of committing a crime." On the other hand, the State argues that "obtaining" and "exerting" are indistinguishable in proving unauthorized control.

Jury unanimity is statutorily required in Kansas. K.S.A. 22-3421; *State v. Wright*, 290 Kan. 194, 201, 224 P.3d 1159 (2010). In an alternative means case, the State is not required to elect one means or another when presenting its case to the jury or when requesting jury instructions. *State v. Stevens*, 285 Kan. 307, 309, 172 P.3d 570 (2007). Nevertheless, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. *Wright*, 290 Kan. at 202. This safeguard prevents a jury, partially or wholly, from reaching a finding of guilt based on insufficient evidence. As a matter of law, when the State provides inadequate evidence for a reasonable factfinder to reach guilt through a certain means, a conviction must be reversed. *Wright*, 290 Kan. at 203.

"Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means." *Wright*, 290 Kan. at 202 (quoting *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 [1994]). "In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt." *Wright*, 290 Kan. at 202.

Accepting these alternative means concepts, we first must determine if this case truly presents an alternative means issue. The State maintains that it does not. If the statute that penalizes theft, K.S.A. 21-3701(a)(1), does not provide for more than one way to commit the crime, jury unanimity is not at issue and alternative means analysis is inapplicable. This issue involves statutory interpretation. Interpretation of a statute is a question of law over which an appellate court has unlimited review. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

Alternative means essentially involves materially different ways of committing a crime based on the elements or statutory definition of the crime. If a criminal statute creates two or more distinct ways of committing the crime, those ways reflect alternative means. *State v. Schreiner*, 46 Kan. App. 2d 778, Syl. ¶ 1, 264 P.3d 1033 (2011), *petition for rev. filed* December 5, 2011. Other criminal statutes establish only one way to commit an offense. 46 Kan. App.

2d 778, Syl. ¶ 1. For example, when a criminal statute uses synonyms to describe the same conduct, the synonyms do not form an alternative means for committing a crime. *State v. Rollins*, 46 Kan. App. 2d 17, 22, 257 P.3d 839 (2011), *rev. denied* February 17, 2012 ("There is no quantifiable difference between the actions that constitute obtaining or exerting; these words create a distinction without a difference . . . . Consequently, this is not an alternative means case."); see also *State v. Fawl*, No. 103,004, 2011 WL 4563067 (Kan. App. 2011) (unpublished opinion), *petition for rev. filed* October 31, 2011.

Moreover, we are guided in this inquiry by another case that has considered whether "obtaining or exerting control" creates an alternative means for committing the crime of theft. In *State v. Polk*, No. 105,011, 2012 WL 1237880 (Kan. App. 2012), *petition for rev. filed* April 27, 2012, this court furnished an additional reasoning why "obtaining or exerting control" does not create an alternative means for committing the crime of theft. The *Polk* court considered the legislature's definition of "obtaining or exerting control" under K.S.A. 2010 Supp. 21-3110(13), which states: " 'Obtains or exerts control' over property includes but is not limited to, the taking, carrying away, or the sale, conveyance, or transfer of title to, interest in, or possession of property."

The *Polk* court held that there cannot be a difference between "obtains control" and "exerts control" since the legislature defined them to mean the same thing. We agree.

For the foregoing reasons, K.S.A. 21-3701(a)(1) does not present an alternative means issue. Consequently, we find that Snover's alternative means argument fails.

*Was the Trial Court's Use of the Phrase "Degree of Certainty" under Its Eyewitness Identification Instruction Erroneous?*

Snover next argues that the trial court erred in instructing the jury that it could consider Blanton's "degree of certainty" when it weighed the reliability of Blanton's eyewitness identification testimony. Specifically, Snover maintains "[b]ecause scientific evidence demonstrates that an eyewitness' confidence in an identification has very little to do with the accuracy or reliability of that identi-

fication, the district court in the present case erred in instructing the jury otherwise."

Snover did not object to the trial court's use of the "degree of certainty" language in the jury instructions. Thus, the applicable standard of review for us is clearly erroneous:

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous. Opportunity shall be given to make the objections out of the hearing of the jury." K.S.A. 22-3414(3).

"Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the error had not occurred." *State v. Carter*, 284 Kan. 312, 324, 160 P.3d 457 (2007). Thus, Snover's argument will be successful only if he can show that the jury would have rendered a different verdict if the trial court had not given the identification instruction.

The jury instruction that Snover complains of on appeal reads as follows:

"This is a rather lengthy instruction on eyewitness identification. The law places the burden upon the State to identify the defendant. The law does not require the defendant to prove he has been wrongly identified. In weighing the reliability of eyewitness identification testimony, you first should determine whether any of the following factors existed, and if so, the extent to which they would affect accuracy of identification by an eyewitness. Factors you may consider are: . . . 6. The degree of certainty demonstrated by the witness at the time of any identification of the accused."

Snover contends that "[d]espite its inclusion in PIK 52.20, '[t]he degree of certainty demonstrated by the witness at the time of any identification of the accused' is actually a factor that, 'at times,' inversely correlates with the accuracy of a witness' identification. [Citation omitted.]"

Our Supreme Court recently held that "the witness certainty factor in PIK Crim. 3d 52.20 should no longer be used because it prompts the jury to conclude that eyewitness identification evidence is more reliable when the witness expresses greater cer-

tainty." *State v. Mitchell*, 294 Kan. 469, 471, 275 P.3d 905 (2012); see also *State v. Anderson*, 294 Kan. 450, Syl. ¶ 2, 276 P.3d 200 (2012) (error to instruct jury on degree of certainty factor). In this case, the trial court's eyewitness identification instruction followed PIK Crim. 3d 52.20 and therefore included the degree of certainty factor. Thus, the trial court erred when it gave this instruction. Even so, the trial court's use of the degree of certainty factor is not reversible error unless the jury instruction "could reasonably have misled the jury." *Mitchell*, 294 Kan. at 481.

To determine if the degree of certainty instruction could reasonably have misled the jury, an appellate court must satisfy certain conditions:

"(a) decide whether an expression of certainty by the eyewitness was communicated to the jury and, if so, (b) the nature and extent of the certainty expressed. If the court determines there was no degree of certainty conveyed by the eyewitness when making the identification, the jury could not have been misled by including this factor in the jury instructions." 294 Kan. 469, Syl. ¶ 5.

"If an appellate court determines an eyewitness expressed a degree of certainty when making an identification of the defendant, the court next must determine: (a) whether the identification was a critical aspect of the prosecution's case and (b) whether there is any serious question about the reliability of the witness' identification." 294 Kan. 469, Syl. ¶ 6. In addition, use of the degree of certainty factor in the jury instructions is not reversible error if the jury was "thoroughly exposed to the facts and circumstances both in favor of and against the accuracy" of the witness' identification of the defendant and his or her expression of certainty about that identification. 294 Kan. 483. Finally, the normal concerns about eyewitness identification reliability are not present where the eyewitness knew the defendant. 294 Kan. 469, Syl. ¶ 8.

Here, although both Slocum and Blanton identified Snover in court during their trial testimony, neither witness expressed any degree of certainty when they testified to the events that happened on January 29 and 30, 2010. Thus, Slocum and Blanton's testimony was not of the type generally associated with the certainty factor included in jury instructions. See *Mitchell*, 294 Kan. at 482 (witness indicating he was "100 per cent certain" in his identification). In

other words, the jury could not have been misled by Slocum or Blanton's testimony because neither witness conveyed a degree of certainty in making their identification of Snover. Consequently, the trial court did not commit reversible error in including the degree of certainty language under PIK Crim. 3d 52.20 in the jury instructions.

But even if either Slocum or Blanton would have indicated a degree of certainty in their identification, Snover has failed to meet his burden to show that the jury could reasonably have been misled by the "degree of certainty" factor included in the jury instructions. At trial, Slocum testified to the events that occurred on January 29 and 30. Slocum's testimony corroborated Blanton's eyewitness identification testimony. For instance, both Slocum and Blanton testified that Snover was one of the men present when Blanton came to pick up the men from the broken down vehicle. Slocum and Blanton also both testified that Blanton picked up Slocum and Wormell while Snover stayed behind with the vehicle so that he could try to fix it.

In addition, Slocum's testimony was supported by video evidence presented by the State, which showed that three men broke into the victim's shed. Moreover, both Slocum and Blanton testified that they personally knew Snover, although the extent of their relationships with Snover was disputed. Conversely, Snover did present some evidence to support his defensive theory that he was not one of the three men who had stolen the property. At trial, Snover's fiancée testified that Snover was with her when the items were stolen from the shed. Nevertheless, there is substantial evidence in the record connecting Snover to the crimes with which he was charged. Thus, Snover has failed to meet his burden to show that the jury could reasonably have been misled by the "degree of certainty" factor in the jury instructions. Finally, the jury in this case was thoroughly exposed to the facts and circumstances both in favor of and against the accuracy of the witnesses' identification. For instance, Snover's counsel cross-examined both Slocum and Blanton to try and show that Snover was not involved in the crime. The jury apparently did not believe Snover's defensive theory.

The eyewitness identification instruction, which contained the phrase "degree of certainty" was not misleading. Although the trial court should not have given the instruction, Snover's argument fails because neither Slocum nor Blanton expressed a degree of certainty to the jury and the jury was exposed to the facts and circumstances surrounding their identification. Consequently, we determine that the trial court's use of the phrase "degree of certainty" under its eyewitness identification instruction was not reversible error.

*Did the Trial Court Unconstitutionally Use Snover's Criminal History to Increase His Sentence Without Proving It to a Jury?*

Next, Snover argues that the trial court erred by using his criminal history to calculate his criminal history score and enhance his sentence without requiring the prior convictions to be proven to a jury beyond a reasonable doubt. Snover concedes that our Supreme Court decided this issue against him in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002).

Review of this issue involves a question of law over which appellate courts exercise unlimited review. *Ivory*, 273 Kan. at 46.

In *Ivory*, our Supreme Court held that the use of criminal history scores is not unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). 273 Kan. at 46. Additionally, our Supreme Court rejected the argument that prior convictions should be treated as essential elements to be presented and decided by a jury. 273 Kan. at 47.

The Court of Appeals is duty bound to follow our Supreme Court precedent, unless there is some indication that the court is departing from its previous position. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). There is no indication that our Supreme Court is departing from its decision in *Ivory*. Consequently, the trial court did not err when it included Snover's prior convictions in its calculation of his criminal history score.

Affirmed.