(268 P.3d 1210)
No. 104,282

STATE OF KANSAS, *Appellee*, v. HERMAN KERWIN BOYD IV, *Appellant*.

946

Opinion filed December 23, 2011.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREENE, C.J., ATCHESON, J., and BRAZIL, S.J.

ATCHESON, J.: A Johnson County jury convicted Herman Kerwin Boyd IV of robbing a Sonic drive-in restaurant. Because Boyd held up the place with a cohort in crime, he was charged with aggravated robbery and aggravated assault both as a principal and as an aider and abettor. The case was submitted to the jury that way, prompting Boyd to burrow deep into the developing law of alternative means in hopes of finding an escape route on appeal. He primarily argues that aiding and abetting, as a basis for imposing criminal liability, amounts to an alternative means to acting as a principal. We agree. But on the facts, Boyd loses. There is sufficient evidence to support his conviction for aggravated robbery as both a principal and an aider and abettor. And because Boyd's partner wielded a deadly weapon, the aggravated assault was foreseeable criminal conduct during the course of the robbery, providing an independent ground to uphold that conviction. We also consider and turn aside Boyd's additional alternative means arguments and a challenge to his sentence.

## FACTS AND PROCEDURAL HISTORY

During the evening of December 5, 2005, Boyd and Christopher Shivers went into a Sonic restaurant in Shawnee, Kansas. They entered with robbery rather than burgers on their minds. Shivers immediately fired a handgun and demanded the manager appear front and center. Ryan Greene came to the front of the store where he joined fellow employees Jennifer Thompson and Christina Osburn. Brandon Greene, Ryan's brother, was working in the grill area and tried to sneak out the back when the commotion erupted. Shivers intercepted him, and using the gun to emphasize the point

that escape wasn't acceptable behavior, he shepherded Ryan toward the front of the store.

Shivers then brandished the gun and demanded Ryan Greene turn over the money. Ryan Greene opened the cash register. According to Thompson, Boyd then "pretty much pushed [Ryan] out of the way" and took the money. Shivers told Ryan Greene to open the safe. He complied. Thompson recalled Boyd urging Shivers to hurry up with the safe. Boyd then grabbed a plastic container out of the safe.

Shivers demanded the paper money Thompson and Osburn had in their aprons. Boyd, however, instructed Shivers to leave the coin changer Thompson carried, saying, "No, we don't need that." Thompson testified that Boyd actually took the money from her. Boyd and Shivers then left the restaurant.

Security cameras captured much of the robbery and the images showed Boyd. The police released surveillance photos to the media the next day, and a tipster called in to identify Boyd. After the police arrested Boyd, he admitted being with Shivers at the Sonic restaurant. The Johnson County district attorney charged Boyd with three counts of aggravated robbery for taking property from Ryan Greene, Thompson, and Osburn and one count of aggravated assault of Brandon Greene. At trial, Boyd testified in his own defense. He told the jury he went into the Sonic restaurant with Shivers and helped in the robbery because he was fearful that Shivers would have shot him had he refused. Boyd's version, if the jury were to believe it, supported a defense of compulsion. See K.S.A. 21-3209.

The trial judge instructed the jury that Boyd could be found guilty of the aggravated robberies either as an aider and abettor or as a principal. The instruction related to the robbery of Ryan Greene omitted a portion of the aiding and abetting language. Nobody has complained about the omission on appeal, and we find it immaterial to the disposition of the issues presented to us. The trial judge instructed the jury on principal and aider and abettor liability on the aggravated assault count. The instructions included an explanation of aider and abettor liability under K.S.A. 21-3205(1). And they explained that a person committing a crime could be held

liable for any other foreseeable crime occurring during the course of that offense, as provided in K.S.A. 21-3205(2). The trial judge instructed on Boyd's compulsion defense. On appeal, Boyd lodges no complaint about the jury instructions.

The jurors apparently found the compulsion defense underwhelming. They convicted Boyd of the aggravated robberies and the aggravated assault. Boyd's criminal history placed him in the highest category on the sentencing grid. The trial judge sentenced Boyd to 233 months in prison on the aggravated robbery of Ryan Greene, reflecting a standard sentence. He imposed sentences of 59 months in prison on the remaining aggravated robbery convictions and 12 months in prison on the aggravated assault conviction. All of those sentences were concurrent to the 233-month sentence. Boyd has timely appealed.

## ALTERNATIVE MEANS CHALLENGES
### General Principles

In *State v. Schreiner*, 46 Kan. App. 2d 778, 782, 264 P.3d 1033 (2011), this court recently laid out the ramifications of submitting alternative means of committing a crime to a jury and the potentially seismic consequences when the evidence fails to support one of those means. We stated:

"When a statute establishes alternative means of committing a crime, the State must present evidence sufficient to support each means submitted to the jurors in the instructions. All of the jurors must be convinced beyond a reasonable doubt the defendant committed the offense. But the jurors need not agree on which of the alternative means has been proven. *State v. Wright*, 290 Kan. 194, Syl. ¶ 2, 224 P.3d 1159 (2010). A general verdict of conviction is legally proper so long as the record contains sufficient evidence to support each means. See *Wright*, 290 Kan. 194, Syl. ¶ 2; *State v. Stevens*, 285 Kan. 307, 316, 172 P.3d 570 (2007). Should evidence be lacking on one of the means, however, then a guilty verdict fails for insufficient evidence even though there may be overwhelming evidence supporting the other means. See *Wright*, 290 Kan. at 204-06." *Schreiner*, 46 Kan. App. 2d at 782.

Although *Wright* expressly defined the error in allowing jurors to consider a means of committing a crime without adequate factual support as one of insufficient evidence, the court in that case found enough evidence for each means and, therefore, affirmed the jury's

guilty verdict. The court declined to expound upon the appropriate remedy. The Kansas appellate courts, however, have consistently recognized that a judgment of acquittal must be entered when a criminal conviction has been successfully challenged for lack of evidence. *State v. Scott*, 285 Kan. 366, Syl. ¶ 2, 171 P.3d 639 (2007); *State v. Hollins*, 9 Kan. App. 2d 487, 489-90, 681 P.2d 687 (1984). The United States Supreme Court has pointed out that a constitutional double jeopardy bar would preclude a retrial when a conviction has been reversed for insufficient evidence. *Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). We presume that to be the appropriate remedy absent any direction otherwise from the Kansas Supreme Court. *Schreiner*, 46 Kan. App. 2d at 782.

In considering Boyd's alternative means challenges, we view the evidence in a light most favorable to the State as the party prevailing at trial. An appellate court neither reweighs the evidence generally nor credits witness testimony contrary to the verdicts. See *State v. Trautloff*, 289 Kan. 793, 800-01, 217 P.3d 15 (2009); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). After taking the evidence that way, the court typically reviews the relevant statutory language to determine if it creates alternative means of committing a given crime. That poses a question of law over which the appellate court exercises unlimited review. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). In *Schreiner*, 46 Kan. App. 2d 778, Syl. ¶ 1, this court offered a general description of alternative means offenses:

"Alternative means essentially entail materially different ways of committing a particular crime based on the statutory definition or elements of the offense. When criminal statutes create two or more distinct ways of committing an offense, those ways reflect alternative means. Other criminal statutes establish only one way to commit an offense, although they may use synonymous or redundant terms to define the prohibited conduct. Such statutes do not set forth alternative means."

With those precepts, we turn to the particular alternative means challenges Boyd asserts on appeal.

*Aggravated Robbery*

First, Boyd says the aggravated robbery statute creates alternative means of committing that offense by defining the crime as "taking property from the person or the presence of another" using force or threat of bodily harm when the perpetrator has a deadly weapon or actually inflicts bodily harm on someone. K.S.A. 21-3427. In this case, the jury was instructed on each of the aggravated robbery counts that the State had to prove property was taken "from the person or the presence" of the particular victim. Boyd contends the description of the taking creates two distinct means of carrying out an aggravated robbery.

We disagree. The essence of the crime is forcibly taking property when a person is present. The term "from the person or the presence" of the victim describes the proximity of the property and the individual. It does so with phraseology that overlaps. Taking property from the presence of the victim (who need not be the owner of whatever the perpetrator seizes) describes an area in the general vicinity of the victim. Taking property from the person of the victim refers to the immediate environs of the body such as a pocket, a purse, or the hands. Thus, a taking "from the person" is actually encompassed within a taking "from the presence" of the victim. The robbery and aggravated robbery statutes would criminalize the same range of conduct even if the phrase "the person" had been omitted from the definitions of those crimes. Accordingly, taking property from the person of the victim and taking property from the presence of the victim do not constitute alternative means of committing aggravated robbery.

For purposes of determining the existence of alternative means, we consider the "taking" language of the robbery and aggravated robbery statutes to be comparable to the definition of sexual intercourse this court analyzed in *Schreiner*. Under the Kansas Criminal Code, "sexual intercourse" has been defined in K.S.A. 21-3501(1) as "any penetration of the female sex organ by a finger, the male sex organ or any object." The *Schreiner* court held "any object" to be an umbrella term including the anatomical parts identified in the definition and, thus, rejected an alternative means

challenge to a rape conviction on the theory that penetration by each of the instrumentalities created an alternative means of committing the crime. *Schreiner*, 46 Kan. App. 2d at 783-85. Taking property from the presence of the victim is a comparable umbrella term covering taking property from the person of the victim. The *Schreiner* court recognized some degree of redundancy may be tolerated in criminal statutes to enhance the objective of giving fair notice of the proscribed conduct. *Schreiner*, 46 Kan. App. 2d at 785. The challenged language of the robbery statutes reflects another example of that principle.

Historically, robbery was an aggravated form of the common-law crime of larceny rooted in the taking of another's property. See *State v. Boyd*, 281 Kan. 70, 94, 127 P.3d 998 (2006) (Theft reflects a lesser degree of the generic crime of larceny, while robbery presents an enhanced form of the crime.); *State v. Long*, 234 Kan. 580, 591-92, 675 P.2d 832 (1984), *disapproved in part on other grounds State v. Keeler*, 238 Kan. 356, 710 P.2d 1279 (1989) (detailed discussion of the common-law ancestry of robbery and theft). Robbery entailed obtaining the property from the individual by a direct threat or application of force. The crime created a volatile, potentially deadly confrontation. Thus, the English highwayman's demand to the unfortunate traveler, "Stand and deliver—your money or your life." See "Highwayman," Wikipedia.org/wicki/Highwayman (2011). The danger remained the same whether the property came from the traveler's purse or the inside of a coach. In contrast, theft—another form of larceny—entailed no such danger to the victim. The thief worked by stealth and secured the victim's property without his or her knowledge. *Long*, 234 Kan. at 591-92. The distinction between robbery and theft carries over to modern criminal codes. Kansas, therefore, treats robbery as a crime against persons and punishes it far more harshly than theft, a crime against property, precisely because the commission of the offense almost invariably creates circumstances fraught with physical peril for the victim. The legislature's use of the phrasing "taking property from the person or the presence of another" merely serves to criminalize the peril associated with the crimes of robbery and aggravated rob-

bery. We reject Boyd's argument that alternative means lurk somewhere beneath that statutory language.

*Aiding and Abetting*

Boyd next argues that the statute defining and proscribing aiding and abetting, K.S.A. 21-3205(1), creates alternative means of imposing criminal liability. This court recently rejected that construction of the aiding and abetting statute. *State v. Johnson*, 46 Kan. App. 2d 870, Syl. ¶ 9, 265 P.3d 585 (2011). The statute, in pertinent part, provides: "A person is criminally responsible for a crime committed by another person if such person intentionally aids, abets, advises, hires, counsels, or procures the other to commit the crime." K.S.A. 21-3205(1). In this case, the district court instructed the jury using all of those terms in K.S.A. 21-3205(1), save hiring. In short, the statute imposes criminal liability on someone who induces or helps another person to commit a crime. See Black's Law Dictionary 81 (9th ed. 2009) (Aiding and abetting means "to assist or facilitate the commission of a crime, or to promote its accomplishment."). Aiding and abetting, then, are umbrella words broadly covering the additional terms in K.S.A. 21-3205(1), which are simply more specific forms of facilitating or promoting criminal activity. The *Johnson* decision so holds and correctly finds the serial terms in K.S.A. 21-3205(1) do not create alternative means of committing a crime. *Johnson*, 46 Kan. App. 2d at 884-86. We find the reasoning of *Johnson* persuasive and dispositive of Boyd's challenge.

*Liability as Aider and Abettor or as Principal*

Finally, Boyd argues that facing liability for a crime as an aider and abettor, on the one hand, creates an alternative means to committing the same offense as a principal, on the other. That position has analytic merit, given how the Kansas courts have thus far described alternative means. As outlined in *Schreiner*, for example, alternative means derive from materially different ways of committing a crime. *Schreiner*, 46 Kan. App. 2d 778. In considering aiding and abetting, as defined in K.S.A. 21-3205(1), that description might be rephrased more broadly as markedly different ways

of facing criminal liability for participating in specific wrongful conduct. We think the actions of an aider and abettor may be sufficiently distinct from the actions of a principal to establish an alternative means of committing a crime. An example illustrates the point. A person may be guilty of murder as an aider and abettor for hiring the actual killer or whisking the perpetrator away from the scene of the shooting. Those actions are measurably different from the principal's physical conduct in taking a life. Indeed, the instigator of a murder-for-hire typically remains far removed from the scene of the crime. Societal norms, however, treat the aider and abettor and the principal with moral and legal equivalence notwithstanding the gulf that may separate their respective actions. By enacting K.S.A. 21-3205(1), the legislature confirmed those norms: promoting or assisting in a crime is just as deserving of opprobrium and punishment as the direct commission of the offense. But the gulf in conduct resulting in criminal liability sufficiently establishes aiding and abetting—the promotion of or assistance in carrying out a specific crime—as an alternative means to liability as the principal.

Aider and abettor liability applies to pretty much every substantive criminal offense. It is not, therefore, a distinct means of committing one particular crime but a means common to all. But that really does not distinguish aiding and abetting in a meaningful way from other alternative means. Given the perceived ill outlined in *Wright*, we conclude aiding and abetting described in K.S.A. 21-3205(1) must be recognized as an alternative means. The court in *Wright* expressed concern that instructing a jury on an alternative means for which little or no evidence had been presented might prompt some jurors to vote to convict on that basis, thereby offending statutory requirements for a unanimous verdict. *Wright*, 290 Kan. at 205-06. The deficiency is not subject to harmless error review and requires relief regardless of the strength of the evidence to support the other means submitted to the jury. 290 Kan. at 205-06.

The same considerations come into play when jurors have been instructed they may convict a defendant as a principal or as an aider and abettor. For unanimity purposes—the concern in

*Wright*—the jury really has three options: (1) convict as an aider and abettor; (2) convict as a principal; or (3) acquit. The fear expressed in *Wright* is that some jurors might choose to convict on a means or ground for which there is no evidence. According to *Wright*, a verdict that could rest, at least in part, on such a lack of evidence offends a criminal defendant's statutory right to a unanimous decision of all jurors on the question of guilt. 290 Kan. at 205-06. In turn, implicit in *Wright* is the assumption that at least some of the jurors who might favor convicting a defendant based on the unsupported alternative means would migrate to acquittal if that means were not an option. That is, those jurors might opt to vote not guilty rather than for convicting on a means of committing the crime supported in the evidence. The result then could be a deadlocked jury. But if the assumption were that all of those jurors would migrate to convicting based on the remaining means supported in the evidence, the error in submitting a means without evidentiary support could not improperly deprive the defendant of a unanimous verdict. In short, the danger postulated in *Wright* that exists when a jury has been instructed on alternative means of committing a particular crime also exists if the jury has been given the options of convicting a defendant as an aider and abettor or as a principal.

We turn to the application of *Wright*'s alternative means considerations to the facts of this case. As to the three aggravated robbery counts, the evidence taken most favorably to the State supports Boyd's criminal liability as both an aider and abettor and as a principal. Boyd physically took money from the restaurant's cash drawer and property from the safe. In doing so, he pushed around Ryan Greene, the manager. Those are actions of a principal. He also told Shivers that they didn't want the coin changer from Thompson. And he directed Shivers to hurry up in opening the safe. Those are actions of an aider and abettor. In legally comparable circumstances, the Kansas Supreme Court found sufficient evidence to support the conviction of a defendant as both an aider and abettor and as a principal when he actively participated with two confederates in the kidnapping and assault of several individ-

uals. *State v. Becker*, 290 Kan. 842, 852-53, 235 P.3d 424 (2010). We, therefore, affirm the aggravated robbery convictions.

The aggravated assault count presents a more intricate alternative means issue and requires a more extended analysis of statutory aider and abettor liability. We ultimately conclude on the facts here, where the aggravated assault occurred during the course of an aggravated robbery, Boyd's conviction may be upheld independent of any alternative means considerations. The result derives from a wholly separate legal theory of aider and abettor liability codified in K.S.A. 21-3205(2). Under that provision, an aider and abettor stands liable for "any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person as a probable consequence of committing or attempting to commit the crime intended." K.S.A. 21-3205(2). That principle of criminal liability suffices to impute the aggravated assault to Boyd. The trial court here instructed the jury on aider and abettor liability under both K.S.A. 21-3205(1) and K.S.A. 21-3205(2).

The undisputed evidence shows that Shivers wielded the handgun and pointed it at Brandon Greene. Boyd brandished no weapon during the course of the robbery. Looking at the aggravated assault alone, Boyd's liability as a principal or as an aider and abettor promoting or assisting in the offense presents a problematic alternative means issue.

To illustrate, assume the only charge in this case were an aggravated assault. Boyd and Shivers walk up to an individual. Boyd says, "That's the guy. Do it." Shivers pulls out the handgun, points it at the individual, and says to him, "You're a dead man." He pauses. Boyd and Shivers then walk away. Boyd goes to trial, and that case is submitted to the jury on an aiding and abetting theory and on a principal liability theory. In the illustration, there is no evidence to support principal liability on Boyd's part, but more than enough for aiding and abetting. Under *Wright*, however, that would be insufficient to sustain a conviction, since no evidence would support one of the means submitted to the jury.

The circumstances of the aggravated assault in this case do not vary materially from the illustration for alternative means purposes. So if the aggravated assault were the only crime charged, we would

be constrained to reverse the conviction based on insufficient evidence to support Boyd's liability as a principal.

But K.S.A. 21-3205(2) imposes liability on a person committing a crime in league with one or more associates for any other crimes those associates commit during the perpetration of the planned offense, so long as the additional crimes may be considered foreseeable consequences. That rule of liability does not depend upon or create alternative means of committing a crime. Rather, the statute expands liability or responsibility for an individual engaged in a criminal enterprise to include crimes other participants may have committed in the course of carrying out that enterprise. The individual need not have committed the crime itself to be liable for it. Thus, liability under K.S.A. 21-3205(2) has nothing to do with alternative means of committing a crime.

The jury was properly instructed that Boyd could be found guilty of any crime committed in the course of the aggravated robbery if that crime might be reasonably foreseeable in carrying out the robbery. Shivers' aggravated assault of the restaurant employee was a plainly predictable part of the robbery. Boyd knew full well before the two entered the Sonic restaurant that Shivers had a handgun. Recall that Boyd's unsuccessful defense was based on compulsion—he claimed he participated in the robbery only because Shivers threatened him with the gun. And a robber reasonably might expect his armed accomplice to use the gun to add potency to directions given the victims. That, of course, amounts to an aggravated assault.

In those circumstances, the law says Boyd may be convicted of an aggravated assault even though he didn't have the gun and didn't personally threaten anyone. That has nothing to do with alternative means of committing an aggravated assault and everything to do with imposing liability on those who confederate to commit a crime for any additional crimes reasonably undertaken in furtherance of that confederation. The Kansas Supreme Court has stated the principle underlying K.S.A. 21-3205(2) this way: "All participants in a crime are equally guilty of that crime and any other reasonably foreseeable crime committed in carrying out the intended crime." *State v. Griffin*, 279 Kan. 634, Syl. ¶ 10, 112 P.3d 862 (2005).

Because Boyd has been properly convicted of aggravated robbery, the aggravated assault Shivers committed during the course of the robbery likewise may be imputed to him even though he did not promote, assist in, or carry out the aggravated assault by any means whatsoever. We, therefore, affirm Boyd's conviction for aggravated assault.

### SENTENCING

Boyd argues that the trial court's use of his past convictions in determining an appropriate sentence impairs his constitutional rights because the fact of those convictions was not determined beyond a reasonable doubt by the jury. Boyd relies on the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to support that proposition. He also acknowledges the Kansas Supreme Court has rejected that argument and has found the State's current sentencing regimen conforms to the Sixth and Fourteenth Amendments to the United States Constitution with respect to the use of a defendant's past convictions in determining a presumptive statutory punishment. *State v. Fischer*, 288 Kan. 470, Syl. ¶ 4, 203 P.3d 1269 (2009); *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). The trial court imposed the standard presumptive sentence on Boyd, given his criminal history. We, therefore, decline Boyd's invitation to find a sentencing error.

Affirmed.