No. 104,870

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee/Cross-appellant*,

v.

QUINTEN CATO-PERRY,
*Appellant/Cross-appellee*.

SYLLABUS BY THE COURT

1.

The aiding and abetting statute does not create an alternative means of committing the charged crime by adding distinct material elements to the definition of that crime. The aiding and abetting statute simply extends criminal responsibility to a defendant other than the principal actor.

2.

The phrase "person or presence" in the aggravated robbery statute does not create an alternative means of committing the crime; rather, it describes the proximity of the victim to the property taken.

3.

K.S.A. 21-3426 defines robbery as the taking of property from the person or presence of another by force or by threat of bodily harm to any person. The words by force or by threat of bodily harm are merely different options or means of compelling the taking of someone else's property, the focus of the crime of robbery.

1

**4.**

When the extent of a durational departure sentence is challenged on appeal, the appellate standard of review is abuse of discretion, measuring whether the departure is consistent with the purposes of the Kansas Sentencing Guidelines and proportionate to the crime severity and the defendant's criminal history.

**5.**

K.S.A. 21-4716(c)(1) sets out a nonexclusive list of mitigating factors a district court may consider when determining whether to grant a departure sentence. In exercising such discretion, the sentencing court must state on the record at the time of sentencing the substantial and compelling reasons justifying a departure from the presumptive guidelines sentence.

**6.**

Under the factual circumstances presented to the district court in this case, the departure sentence imposed was not disproportionate to the severity level of the crime committed when weighed against the two mitigating factors, which when considered collectively were substantial and compelling reasons that justified the departure sentence.

Appeal from Sedgwick District Court; ERIC R. YOST, judge. Opinion on remand filed August 15, 2014. Affirmed, cross-appeal denied, and remanded with directions.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant/cross-appellee.

*Boyd K. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, for appellee/cross-appellant.

Before MALONE, C.J., HILL, J., and MICHAEL E. WARD, District Judge, assigned.

2

HILL, J.:   After our decision in *State v. Cato-Perry*, 48 Kan. App. 2d 92, 284 P.3d 36 (2012), *rev. granted* May 29, 2014, this case returns to the Court of Appeals on remand from the Kansas Supreme Court on the issue of whether a charge of acting as a principal or aider and abettor created an alternative means case. Our Supreme Court granted the State's petition for review, vacated our prior decision, and remanded this case to us to review the matter in light of *State v. Betancourt*, 299 Kan. 131, 322 P.3d 353 (2014), and *State v. Soto*, 299 Kan. 102, 322 P.3d 334 (2014). We also consider three additional alternative means arguments and the cross-appeal by the State challenging the district court's granting of a durational departure sentence.

Because Cato-Perry committed his crime while on bond, the district court ordered him to serve the 57-month sentence consecutive to his 34-month sentence in case 07CR308. This is a durational departure sentence.

Cato-Perry made four alternative means arguments on direct appeal:   (1) instructing the jury it could convict him of aggravated robbery as either a principal or an aider and abettor created alternative means upon which he could be found guilty of aggravated robbery; (2) the aiding and abetting jury instruction, in accordance with K.S.A. 21-3205(1), created six alternative means by which aggravated robbery could be committed under the aiding and abetting statute; (3) the element of taking property from the "person or presence" of the victim in the aggravated robbery instruction raises an alternative means issue; and (4) the language of taking property from the victim "by force or threat" of bodily harm to commit aggravated robbery created alternative means of committing the crime.

The first panel relied on the ruling in *State v. Boyd*, 46 Kan. App. 2d 945, 268 P.3d 1210 (2011), *overruled in part by Betancourt*, 299 Kan. at 140-41, and reversed Cato-Perry's conviction based on his first argument. *Cato-Perry*, 48 Kan. App. 2d at 95-96. Having reversed the conviction, the panel did not address Cato-Perry's remaining

alternative means arguments or the State's cross-appeal. See *Cato-Perry*, 48 Kan. App. 2d at 92-93, 95. *Cato-Perry* also has been overruled by *Betancourt*, 299 Kan. at 140-41.

In *Betancourt*, the Kansas Supreme Court rejected the argument that the aiding and abetting statute created an alternate means for committing first-degree murder. See 299 Kan. 131, Syl. ¶¶ 1-3. The court held that the aiding and abetting statute does not create an alternative means of committing the charged crime by adding distinct material elements to the definition of that crime. Instead, the aiding and abetting statute simply extends criminal responsibility to a defendant other than the principal actor. 299 Kan. at 137-40; see *Soto*, 299 Kan. at 109 (affirming *Betancourt*). Through application of the ruling in *Betancourt*, Cato-Perry's first argument fails.

We will therefore move on to Cato-Perry's remaining three arguments.

*Second alternative means argument*

Cato-Perry's second alternative means argument—the six ways of aiding and abetting set out in the statute are themselves alternative means of aiding and abetting— has no merit. K.S.A. 21-3205(1), the aiding and abetting statute, states that a person is criminally responsible for a crime committed by another if such person intentionally "aids, abets, advises, hires, counsels or procures" the other person to commit the crime. Cato-Perry contends the six verbs in the statute create six alternative means. The Supreme Court in *State v. Bowen*, 299 Kan. 339, 352-53, 323 P.3d 853 (2014), held that any argument that the aiding and abetting statute creates multiple alternative means of committing the underlying offense is meritless in light of *Betancourt*. The aiding and abetting statute does not add an element to the underlying crime. See *State v. Jackson*, 49 Kan. App. 2d 116, Syl. ¶ 4, 305 P.3d 685 (2013), *rev. denied* 299 Kan. ___ (May 29, 2014). Thus, we reject Cato-Perry's argument that the aiding and abetting statute in this case created alternative means problems.

4

*Third alternative means argument*

Here, Cato-Perry contends the aggravated robbery jury instruction created an alternative means issue because it required the State to prove he took property from the victim's "person or presence." Cato-Perry does not dispute that the State presented sufficient evidence to prove that he took property from the victim's *presence*, but he argues the State failed to present sufficient evidence that a taking occurred from the victim's *person*. He relies on *State v. Robinson*, 27 Kan. App. 2d 724, 728, 8 P.3d 51 (2000), which held that "[p]ersonal property can be taken from a victim's 'presence' without being taken from his or her 'person,' but it cannot be taken from his or her 'person' without being taken in his or her 'presence.'"

Cato-Perry's reliance on *Robinson* is misplaced. Because *Robinson* only concerned a sufficiency of the evidence analysis as applied to the defendant's alleged jury instruction error, not an alternative means analysis, it does not apply here. See *Jackson*, 49 Kan. App. 2d at 134-35. More importantly, the lack of evidence that Cato-Perry took property from the victim's person does not require reversal of the conviction if "person" and "presence" are not alternative means under K.S.A. 21-3426 and K.S.A. 21-3427. See *State v. Wright*, 290 Kan. 194, 203, 224 P.3d 1159 (2010).

In *Boyd*, this court held that the language of "taking property from the person or the presence" of the victim does not create alternative means under K.S.A. 21-3427. 46 Kan. App. 2d at 950-51. In doing so, the *Boyd* panel noted that some degree of redundancy may be tolerated in the criminal code to enhance the objective of giving fair notice of the proscribed conduct and stated:

> "The essence of the crime is forcibly taking property when a person is present. The term
> 'from the person or the presence' of the victim describes the proximity of the property and
> the individual. It does so with phraseology that overlaps. Taking property from the
> presence of the victim (who need not be the owner of whatever the perpetrator seizes)

5

describes an area in the general vicinity of the victim. Taking property from the person of the victim refers to the immediate environs of the body such as a pocket, a purse, or the hands. Thus, a taking 'from the person' is actually encompassed within a taking 'from the presence' of the victim. The robbery and aggravated robbery statutes would criminalize the same range of conduct even if the phrase 'the person' had been omitted from the definitions of those crimes." 46 Kan. App. 2d at 950.

This court in *Jackson* recently agreed that the *Boyd* court's analysis of "person or presence" comports with *Brown*, which was decided after *Boyd*. *Jackson*, 46 Kan. App. 2d at 134. The panel in *Jackson* held that "[t]he use of 'person or presence' describes the victim's proximity to the property taken. When conducting the *Brown* analysis on this point, it is apparent that the two words are simply two options used to describe different factual circumstances in which aggravated robbery (or robbery) can occur." 49 Kan. App. 2d at 135. In addition to *Jackson*, 49 Kan. App. 2d 116, Syl. ¶ 5, several other panels have agreed with the *Boyd* court's analysis of "person or presence" to hold that the phrase does not create an alternative means of committing the crime of aggravated robbery. See *State v. Edwards*, 48 Kan. App. 2d 383, Syl. ¶ 5, 290 P.3d 661 (2012), *aff'd* 299 Kan. ___, 327 P.3d 469, 476 (2014); *State v. Moore*, No. 106,209, 2013 WL 1010284, at *3-4 (Kan. App. 2013) (unpublished opinion), *rev. denied* 297 Kan. 1253 (2013); *State v. Suady*, No. 105,603, 2012 WL 6734503, at *5 (Kan. App. 2012) (unpublished opinion), *aff'd in part, rev'd in part, and remanded* 299 Kan. ___, 327 P.3d 466, 468 (2014); *State v. Delacruz*, No. 106,082, 2012 WL 1352865, at *4-5 (Kan. App. 2012) (unpublished opinion), *rev. denied* 299 Kan. ___ (May 29, 2014). Similarly, we see no reason to disagree with the *Boyd* panel's conclusion that the phrase "person or presence" in the aggravated robbery statute does not create an alternative means of committing the crime; rather, it describes the proximity of the victim to the property taken.

*Fourth alternative means argument*

Cato-Perry's fourth alternative means argument refers to that part of the instruction requiring that the jury find "[t]hat the taking was by *force or threat of bodily harm*" to the

6

victim. (Emphasis added.) He relies on *State v. Reed*, 45 Kan. App. 2d 372, 384-86, 247 P.3d 1074, *rev. denied* 292 Kan. 968 (2011), where this court found sufficient evidence existed of both force and threat for each alternative means of aggravated robbery. Cato-Perry argues that the State presented no evidence that he took the money from the victim by threat of bodily harm.

We are not persuaded this language creates an alternative means issue.

*Brown* teaches us that statutory language describing "options within a means" or the "factual circumstances" which prove the underlying crime do not raise an alternative means issue. 295 Kan. 181, Syl. ¶¶ 10-11. K.S.A. 21-3426 defines robbery as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person." Consequently, the words *by force or by threat of bodily harm* are merely different options or means of compelling the taking of someone else's property, the focus of the crime of robbery. Four other panels have reached the same conclusion that this is not an alternative means issue. See *State v. Barnett*, No. 106,133, 2013 WL 4729219, at *3-5 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. ___ (June 20, 2014); *State v. Henderson*, No. 107,193, 2013 WL 3970170, at *3-4 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. ___ (June 17, 2014); *State v. Dewberry*, No. 106,701, 2013 WL 2321039, at *8-12 (Kan. App. 2013) (unpublished opinion); *Moore*, 2013 WL 1010284, at *3-4.

Since no alternative means issues are present in this case, there is no need to weigh the sufficiency of the evidence regarding whether Cato-Perry took property from the person *or* the presence of the victim by force *or* by threat of bodily harm. The record clearly supports that Cato-Perry aided in the crime of aggravated robbery. Sufficient evidence supports his conviction.

*We turn to the State's cross-appeal*

The only issue remaining is the State's attack on Cato-Perry's downward departure sentence. See K.S.A. 21-4721(a) (a departure sentence is subject to appeal by either the defendant or the State). We find no reason to disturb the sentence on appeal.

Our standard of appellate review of a departure sentence depends on the question raised. The State first argues the "sentencing court's findings of fact and reasons for justifying the departure do not constitute substantial and compelling reasons for a departure." When the question is whether a sentencing judge erred in concluding "particular mitigating factors constituted substantial and compelling reasons to depart in a particular case," the appellate standard of review is abuse of discretion. *State v. Spencer*, 291 Kan. 796, 807, 248 P.3d 256 (2011). Judicial discretion is abused if the judicial action is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the district court. *Fischer v. State*, 296 Kan. 808, Syl. ¶ 8, 295 P.3d 560 (2013). In the alternative, the State challenges the extent of the district court's downward durational departure. When the extent of a durational departure is challenged, "the appellate standard of review is abuse of discretion, measuring whether the departure is consistent with the purposes of the guidelines and proportionate to the crime severity and the defendant's criminal history." *Spencer*, 291 Kan. at 807-08.

K.S.A. 21-4716(c)(1) sets out a nonexclusive list of mitigating factors a district court may consider when determining whether to grant a departure sentence. In exercising such discretion, the sentencing court must state on the record at the time of sentencing the substantial and compelling reasons justifying a departure from the presumptive guidelines sentence. K.S.A. 21-4716(a). "Substantial" means something real, not imagined; something with substance, not ephemeral. "Compelling" means that the circumstances of the case force the sentencing court "to 'abandon the status quo' and to venture beyond or depart from the ordinary sentence." *State v. Rochelle*, 297 Kan. 32, 46, 298 P.3d 293, *cert. denied* 134 S. Ct. 270 (2013). We are limited to considering only the

8

articulated reasons for departure stated on the record at sentencing. *State v. Blackmon*, 285 Kan. 719, 725, 176 P.3d 160 (2008). If any of the factors articulated by the sentencing court would justify the departure, the decision will be upheld on appeal. A departure may be justified by the collective factors even if no one factor, standing alone, would justify a departure. *State v. Baptist,* 294 Kan. 728, 734-35, 280 P.3d 210 (2012).

Here, the district court granted Cato-Perry's motion seeking a departure from the presumptive sentencing range of 89-94-100 months' incarceration for a severity level 3 person felony offense based on Cato-Perry's criminal history of D because of his robbery convictions in case 07CR308. The district court imposed a downward durational departure prison term of 57 months. See K.S.A. 21-3427; K.S.A. 21-4704(a). In granting a departure sentence of 57 months, the district court judge stated:

> "You know, I think what was done was a very serious thing and I am unable to grant probation. But I can also take into account his young age and the fact that he's—two offenses were done prior to him doing prison time. He's done prison time on the first one.
>     "I'm going to find that there are substantial and compelling reasons for a durational departure; one being his age at the time the offense was committed, and the second being that he has done prison time subsequent to those offenses—both these offenses being committed and I think there's a limit to how much we can accomplish with a lengthy prison sentence."

Consequently, we must examine whether Cato-Perry's age or his previous prison time already served in case 07CR308 either standing alone or collectively provides a substantial and compelling reason for departure. See *Baptist*, 294 Kan. at 734-35; *Blackmon*, 285 Kan. at 725.

The defendant's age can be properly considered analogous to the substantial and compelling reason justifying departure under the mitigating factor in K.S.A. 21-4716(c)(1)(C), which states: "The offender, because of physical or mental impairment,

9

lacked substantial capacity for judgment when the offense was committed." See *State v. Favela*, 259 Kan. 215, 237-38, 911 P.2d 792 (1996). However, having the defendant's age qualify as a substantial and compelling reason justifying departure, standing alone, is dependent on the district court articulating that it considered the defendant's age in the context of the defendant's relative immaturity. 259 Kan. at 237-38. Any other type of reliance upon the relative age of a defendant by the district court is improper and does not form a substantial and compelling basis to depart from a presumptive sentence. *State v. Ussery*, 34 Kan. App. 2d 250, 259, 116 P.3d 735, *rev. denied* 280 Kan. 991 (2005).

According to the presentence investigation report, Cato-Perry was 19 years old when he committed the aggravated robbery. His counsel, during sentencing, clarified that Cato-Perry "was 19 years old when he pleaded guilty in [case 07CR308], he just turned 20 before the crimes charged in the present case were alleged to have occurred." Because the district court did not articulate a concern other than the young age of Cato-Perry, we are left guessing as to the context in which the district court considered Cato-Perry's age. Consequently, without more, the fact that Cato-Perry was 19 or just turned 20 years old when he committed the aggravated robbery, standing alone, is not a substantial and compelling reason justifying a departure sentence as a matter of law. See *Favela*, 259 Kan. at 234-35. However, the Kansas Supreme Court in *Favela* also held that in such instances the defendant's age may be "considered as part of the entire package." 259 Kan. at 235.

We now examine the second mitigating factor articulated by the district court—Cato-Perry's prior "prison time" in case 07CR308. The motion for departure indicated that Cato-Perry was ordered in May 2008 to serve his 34-month sentence in case 07CR308 after violating his probation for being discharged from the Labette County Correctional Conservation Camp without completing that program. Cato-Perry was then paroled on detainer in February 2010. At the time of sentencing in this case in July 2010, Cato-Perry had earned 321 days of jail-time credit since September 2009. Cato-Perry also

10

addressed the district court about the length of his incarceration for his previous robbery convictions and its impact on his desire to change.

Previous prison time per se clearly does not fall under the statutory list of factors in K.S.A. 21-4716(c)(1). However, by expressing a concern about "how much we can accomplish with a lengthy prison sentence," the district court arguably concluded Cato-Perry would be just as likely to be rehabilitated with time served for his prior robberies in case 07CR308 and the 57 months he would serve under the departure sentence as he would with a presumptive sentence for the aggravated robbery.

The language in *State v. Haney*, 34 Kan. App. 2d 232, 246, 116 P.3d 747, *rev. denied* 280 Kan. 987 (2005), is instructive on this point. The *Haney* court observed that while "a particular defendant's amenability to rehabilitation is not a substantial and compelling reason to depart from the presumptive guidelines sentence by itself, a sentencing court may properly consider such evidence in the totality of circumstances in determining the appropriate penalty to be imposed . . . if other factors warrant departure." 34 Kan. App. 2d at 246. Thus, though this second factor articulated by the district court, like the defendant's age, is not intrinsically substantial or compelling as a matter of law, it nonetheless appears worthy of the district court's consideration collectively. See *Baptist*, 294 Kan. at 734-35.

Consequently, because neither mitigating factor the district court articulated would, standing alone, necessarily justify a downward departure, the dispositive question is whether these two factors—Cato-Perry's age and his previous prison time or amenability to rehabilitation—aggregate to a substantial and compelling reason for the departure.

The State points to no appellate case to support either of its arguments and, instead, makes a general policy argument by citing two statutes to support its view that

11

the Kansas Legislature would not consider the nonstatutory mitigating factors here substantial and compelling reasons for a 37-month departure sentence and the legislature intended a harsher punishment for offenders such as Cato-Perry. First, K.S.A. 21-4603d(f)(3) provides for a prison sentence if the defendant committed the crime while on release for a felony, "even when the new crime . . . otherwise presumes a nonprison sentence." Second, any person "convicted and sentenced for a crime while on release for a felony . . . shall serve the sentence consecutively to the . . . terms under which the person was released." K.S.A. 21-4608(d).

Both of these statutes do little to advance the State's position. Even ignoring that Cato-Perry's aggravated robbery conviction carried a presumptive prison sentence, K.S.A. 21-4603d(f)(3) enables, but does not require, a district court to imprison a defendant on release on felony bond for a subsequent crime not otherwise subject to imprisonment. See K.S.A. 21-4704. And while K.S.A. 21-4608(d) does require the district court to impose consecutive sentences for the prior felony and subsequent crime, that is exactly what happened here. The district court ordered Cato-Perry's aggravated robbery sentence consecutive to his prior robbery sentence.

At sentencing, the district court departed from a standard presumptive sentence of 94 months, down to 57 months, after inquiring into the presumptive sentencing range Cato-Perry would be subject to without his robbery conviction in case 07CR308, *i.e.*, a criminal history of I. The presumptive sentencing range for a severity level 3 person felony offense committed by a defendant with a criminal history score of I is 55-59-61 months' incarceration. See K.S.A. 21-4704(a). The district court, in considering the timing of both convictions, noted that based on the sentencing grid, even with a criminal history score of I, the low presumptive number of 55 months "is still a substantial amount of time." Consequently, by reducing the presumptive aggravated robbery sentence of 89 to 100 months to 57 months, the district court appeared to ensure that the mitigated sentence Cato-Perry received was still within the presumptive sentencing range of a

12

severity level 3 person felony offense, albeit as if Cato-Perry had no prior criminal history or had never been convicted in case 07CR308.

We hold that under the factual circumstances presented to the district court in this case, the departure sentence imposed was not disproportionate to the severity level of the crime committed when weighed against the two mitigating factors, which when considered collectively were substantial and compelling reasons that justified the departure sentence. See *Baptist*, 294 Kan. at 734-35. The district court's decision is not so arbitrary, fanciful, or unreasonable that no reasonable person in the position of the court would have reached a similar decision. See *Haney*, 34 Kan. App. 2d at 247.

On a final note, the journal entry of judgment incorrectly reflects Cato-Perry received a 45-month sentence instead of the 57-month sentence pronounced at sentencing. A sentence is effective when pronounced from the bench; a sentence in a criminal case does not derive its effectiveness from the journal entry. A journal entry that imposes a sentence at variance with the sentence pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed. *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012).

Finding no error, we affirm Cato-Perry's conviction for aggravated robbery. Because the district court did not abuse its discretion in granting the departure sentence, we deny the State's cross-appeal. We remand to the district court with directions to ensure the journal entry of judgment is corrected to be consistent with the sentence pronounced from the bench.

Affirmed, cross-appeal denied, and remanded with directions.

13