No. 104,870

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee/Cross-appellant*,

v.

QUINTEN CATO-PERRY,
*Appellant/Cross-appellee*.

SYLLABUS BY THE COURT

1.

Alternative means exist where a single offense may be committed in more than one way. In such cases there must be jury unanimity as to guilt for the single crime charged but not as to the means by which the crime was committed.

2.

Where alternative means are presented in a case, the appellate court reviews the evidence in the light most favorable to the State to determine if a rational factfinder could have found the defendant guilty beyond a reasonable doubt on each of the alternative means. If so, the conviction for that crime stands. If not, the conviction for that crime is set aside.

3.

When a defendant is charged as an aider and abettor and as a principal for the same offense, an alternative means issue arises because of the threat to jury unanimity proclaimed in *State v. Wright*, 290 Kan. 194, 224 P.3d 1159 (2010).

1

Appeal from Sedgwick District Court; ERIC R. YOST, judge. Opinion filed August 17, 2012. Reversed and remanded with directions.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant/cross-appellee.

*Boyd K. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, for appellee/cross-appellant.

Before GREENE, C.J., HILL, J., and MICHAEL E. WARD, District Judge, assigned.

HILL, J.: Contending that the trial evidence was insufficient to support one or more of the alternative means of committing the crime, Quinten Cato-Perry appeals his aggravated robbery conviction. Following the reasoning of this court in a prior case, we reverse Cato-Perry's conviction because there was insufficient proof of his participation in this crime as both an aider and abettor and as a principal. Because we are reversing Cato-Perry's conviction, we will not address the State's cross-appeal concerning the departure sentence handed down in this case since that sentence is now set aside.

*Two men jump the counter.*

On June 25, 2007, two men, wearing hooded sweatshirts with the hoods up, walked into a Church's Chicken restaurant in Wichita around 10 p.m. One of them asked for cups of ice (for ice water) from Church's employee Shahid Uzzaman. After Uzzaman gave the man the cups, the two then sat near the counter and drank their ice water while Uzzaman continued working. Uzzaman never got a clear look at their faces. The witnesses described one of the men as fairly short; the other taller. The evidence suggests that Cato-Perry, at more than 6 feet tall, was the taller of the two men.

About 15 minutes after the two men entered, the taller man approached and struck Uzzaman on the left side of his face, knocking him to the ground. Uzzaman stood back

2

up and was struck again by the same man, this time on the front of his face, causing blood to flow. He fell to the floor a second time, injured, scared, and bleeding. He looked up, saw his assailants looking down at him, and he looked away. He considered getting back up, but he decided that he should not.

There were no other customers present in the restaurant when this happened. There were two other employees besides Uzzaman in the restaurant at the time, but they were not up front with Uzzaman. The shift manager, Sandra Sells, was in the office counting money from one of the two cash registers and went to the front of the store when she heard Uzzaman "hollering for help." She saw the shorter man taking money from the second cash register while the taller man stood nearby. The taller man pushed Sells up against a wall. The two men left the restaurant shortly thereafter by going out the back door. More than $200 had been taken from the cash register.

During the attack, Eddy Giron, dishwasher and cook, was in the back of the restaurant, but he overheard Uzzaman arguing with people in the front of the restaurant. The argument got louder. Giron then heard someone jump over the counter, followed by yelling. Giron went toward the front of the restaurant and saw that Uzzaman was getting "beat up." As a result of this beating, Uzzaman sustained injuries to the left side of his face and to his nose.

The police investigation of the aggravated robbery was stalled because Uzzaman and his coworkers could not positively identify the robbers. The restaurant did not have any security cameras. None of the fingerprints, footprints, or other trace evidence initially proved useful. But 2 years later, in 2009, Wichita investigators were advised through a national database that DNA samples taken from one of the water cups the two men drank from matched the DNA of Cato-Perry.

3

Based on the strength of this DNA evidence, the State charged Cato-Perry with aggravated robbery. A jury convicted him of aggravated robbery.

*We repeat our standards on such questions.*

Interpretation of a statute is a question of law over which an appellate court has unlimited review. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). An appellate court first looks at the language of the statute, giving ordinary words their ordinary meaning. When a statute is plain and unambiguous, the appellate court will not read into the statute something not readily found in the statute. *State v. Gacey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009).

As a general rule, criminal statutes must be strictly construed in favor of the accused. And any reasonable doubt as to the meaning of the statute is decided in favor of the accused. But this rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible to achieve legislative design and intent. *State v. Trautloff*, 289 Kan. 793, 796-97, 217 P.3d 15 (2009).

To the extent that alternative means issues involve jury unanimity, an appellate court likewise has unlimited review. *State v. Stevens*, 285 Kan. 307, Syl. ¶ 1, 172 P.3d 570 (2007). And because alternative means questions are ultimately resolved on the sufficiency of the evidence, that standard of review is whether, after considering all of the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt on each of the alternative means presented. *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011); *State v. Becker*, 290 Kan. 842, 855, 235 P.3d 424 (2010).

4

*We look first at the alternative means claim concerning aiding and abetting.*

Cato-Perry makes four distinct alternative means arguments in this case: (1) the alternative means of acting as a principal or aider and abettor; (2) the six alternative means by which one can aid and abet in the commission of a crime; (3) the alternative means of taking property from one's person or presence in order to commit aggravated robbery; and (4) the alternative means of using force or the threat of bodily harm in order to commit aggravated robbery. He asserts that the State failed to present sufficient evidence at trial to support his conviction under one or more of the alternative means. Because we agree with his first argument and are reversing his conviction, we will not address the three other arguments, as they are now moot.

Most current discussions of alternative means law in Kansas begin with *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994). There, our Supreme Court cited with approval *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 (1988), in which that court said the following:

> "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.] In reviewing an alternative means case, the court must determine whether a rational trier of fact *could* have found each means of committing the crime proved beyond a reasonable doubt. [Citations omitted.]"

Then, in *State v. Wright*, 290 Kan. 194, 206, 224 P.3d 1159 (2010), the Supreme Court reaffirmed the *Timley* substantial evidence rule in alternative means cases: "We are now persuaded that the *Timley* alternative means rule is the only choice to ensure a criminal defendant's statutory entitlement to jury unanimity."

Since that ruling, a panel of this court concluded that the principal and aider and abettor theories of liability are indeed alternative means of criminal liability. See *State v. Boyd*, 46 Kan. App. 2d 945, 268 P.3d 1210 (2011), *petition for review filed* January 23, 2012, *cross-petition for review filed* February 6, 2012. *Boyd* initially observed the "actions of an aider and abettor may be sufficiently distinct from the actions of a principal to establish an alternative means of committing the crime." 46 Kan. App. 2d at 953. Although *Boyd* acknowledged aider and abettor liability "applies to pretty much every substantive criminal offense," the court ultimately determined "the danger postulated in *Wright* that exists when a jury has been instructed on alternative means of committing a particular crime also exists if the jury has been giving the options of convicting a defendant as an aider and abettor or as a principal." 46 Kan. App. 2d at 953-54. We adopt the reasoning of the *Boyd* panel. Given the weight our Supreme Court now gives to jury unanimity, there is a distinct possibility that some of the jurors in this case could have found Cato-Perry guilty as one aiding in the crime or as a principal of the crime. We must therefore review the evidence presented at trial.

No witness identified Cato-Perry as one of the robbers. His DNA was found on a cup at the scene. We find evidence in the record that only the shorter man took money from the cash register. The evidence also indicates that Cato-Perry was the taller of the two. From this, we conclude that the State presented evidence that Cato-Perry aided in the crime by hitting Uzzaman twice and shoving the shift manager out of the way. But we find no evidence that he acted as a principal. The only taking here was done by the shorter man.

Because there was insufficient evidence to convict Cato-Perry as both an aider and abettor and as a principal, we reverse his conviction and remand the case for a new trial on the charge of aiding and abetting aggravated robbery. See *State v. Shaw*, 47 Kan. App. 2d ___, Syl. ¶ 5, ___ P.3d ___ (No. 106,105, filed July 20, 2012).

* * *

WARD, J., dissenting: I respectfully dissent from the majority's conclusion that aiding and abetting is an alternative means of committing a crime. The aiding and abetting statute, K.S.A. 21-3205(1), does not fit within the currently recognized definition or view of alternative means. And the century or more of Kansas law regarding aiding and abetting does not support a requirement that juries or appellate courts determine whether defendants acted as principals or as aiders and abettors.

The foundation of the alternative means rule, the requirement of jury unanimity as to the means by which a crime was committed, comes from our Supreme Court's interpretation of the Kansas criminal verdict statute, K.S.A. 22-3421. See *State v. Wright*, 290 Kan. 194, 201, 224 P.3d 1159 (2010). Verdict unanimity in criminal cases is not based in either the Kansas or the United States Constitution. Beier, *Lurching Toward the Light: Alternative Means and Multiple Acts Law in Kansas*, 44 Washburn L.J. 275, 277 (2005). Our courts have stressed that point of law several times recently. See *State v. Voyles*, 284 Kan. 239, 250, 160 P.3d 794 (2007) ("[T]he right to a unanimous jury verdict in a Kansas court is not a federal constitutional right or a state constitutional right, but rather a statutory one."); *State v. Schreiner*, 46 Kan. App. 2d 778, 791, 264 P.3d 1033 (2011) ("First, jury unanimity in criminal cases is a statutory right rather than a fundamental constitutional right."), *petition for review filed* December 5, 2011.

Because jury unanimity is not a fundamental constitutional right, the appellate courts may extend alternative means protection into the arena of aiding and abetting only by interpreting K.S.A. 21-3205(1) as establishing alternative means of committing a crime. This statute reads as follows:

> "A person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime."

7

Our court has noted that K.S.A. 21-3205(1) does not itself define or establish a crime. Rather, it is a statute which "explains the circumstances under which a person may be criminally responsible for a crime committed by another person." *State v. Johnson*, 46 Kan. App. 2d 870, 885, 265 P.3d 585 (2011). Similarly, the United States Tenth Circuit Court of Appeals interpreted the federal aiding and abetting statute, 18 U.S.C. § 2 (1994), as not establishing an independent crime, but rather as abolishing the common-law distinction between principals and accessories to a crime. *United States v. Scroger*, 98 F.3d 1256, 1262 (10th Cir. 1996).

This court has said:  "Alternative means essentially entail materially different ways of committing a particular crime *based on the statutory definition or elements of the offense*." (Emphasis added.) *Schreiner*, 46 Kan. App. 2d at 781. The means of a crime are its elements. Because K.S.A. 21-3205(1) does not define a crime, it contains no elements. Fundamentally and logically then, a statute that defines no crime and has no elements cannot establish alternative means of committing a crime.

A different panel of this court has previously ruled that aiding and abetting is an alternative means of committing a crime. See *State v. Boyd*, 46 Kan. App. 2d 945, Syl. ¶ 5, 268 P.3d 1210 (2011), *petition for review filed* January 23, 2012, *cross-petition for review filed* February 6, 2012. In doing so, that court acknowledged that aiding and abetting is not a distinct means of committing one particular crime, but it referred to aiding and abetting as a "means common to all" substantive crimes. 46 Kan. App. 2d at 953. In finding aiding and abetting to be an alternative means of committing a crime, that court discussed the danger highlighted in *Wright* regarding lack of jury unanimity; found the potential of such danger in aiding and abetting cases; and concluded that aiding and abetting must be recognized as an alternative means so as to avoid such danger. 46 Kan. App. 2d at 953-54.

In the continuing effort of our courts to comply with *Wright* and thus ensure jury unanimity as to the means by which crimes are committed, we should not lose sight of what an alternative means case really is. Alternative means cases are those "where a single offense may be committed in more than one way." *State v. Timley*, 255 Kan. 286, Syl. ¶ 1, 875 P.2d 242 (1994). The fact that more than one person participates in a crime does not mean that the crime was committed in *more than one way*. Alternative means do not arise simply from participation in a crime by multiple defendants and the giving of the aiding and abetting instruction at trial. Rather, alternative means arise from the serial list of terms found within our substantive criminal statutes; from the way in which crimes are charged by the State; and from the wording used by trial courts in the elements instructions to the jury. We learn nothing about the means by which a crime was committed by attempting to discern among the several defendants who was the principal and who was the aider and abettor.

Furthermore, the long history of Kansas law on this subject does not support the conclusion that aiding and abetting is an alternative means of committing a crime. Early on, our Supreme Court stated: "The one acting, the one present, aiding and abetting, and the one absent, counseling, aiding and abetting, are declared to be equally and alike guilty." *State v. Cassady*, 12 Kan. 550, 556, 1874 WL 666 (1874). That decision interpreted the aiding and abetting statute in effect at that time, which read: "Any person who counsels, aids, or abets in the commission of any offense, may be charged, tried and convicted in the same manner as if he were a principal." G.S. 1868, ch. 82, sec. 115, p. 839 (Code Crim. Proc. §115). See *Cassady*, 12 Kan. at 555-56.

In the century or more since *Cassady*, the basic precepts of aiding and abetting law in Kansas have remained constant. The statute has not significantly changed, and our Supreme Court continues to interpret the aiding and abetting statute in much the same way the court did over a century ago. See *State v. Griffin*, 279 Kan. 634, Syl. ¶ 10, 112 P.3d 862 (2005) ("All participants in a crime are equally guilty of that crime and any

9

other reasonably foreseeable crime committed in carrying out the intended crime."); *State v. Scott*, 250 Kan. 350, Syl. ¶ 7, 827 P.2d 733 (1992) ("A person who, either before or during the commission of a crime, intentionally aids, abets, advises, or counsels another to commit a crime with intent to promote or to assist in its commission is criminally responsible for the crime committed regardless of the extent of the person's participation, if any, in the actual commission of the crime."); *State v. Pa*yton, 229 Kan. 106, Syl. ¶ 1, 622 P.2d 651(1981) ("All participants in a crime are equally guilty without regard to the extent of their participation.").

Because all participants in a crime are *equally guilty without regard to the extent of their participation*, prosecutors have generally not bothered to distinguish between principals and aiders and abettors in charging codefendant cases. The defendant may be charged as the principal or as the aider and abettor. *State v. Gant*, 288 Kan. 76, 83, 201 P.3d 673 (2009) ("A person who aids and abets in committing the crime may be charged as a principal or as an aider and abettor."); *State v. Maxwell*, 234 Kan. 393, Syl. ¶ 6, 672 P.2d 590 (1983) ("It is well settled that all participants in a crime are equally guilty without regard to the extent of their participation, and that any person who counsels, aids, or abets in the commission of an offense may be charged, tried and convicted in the same manner as though he were a principal.").

And although Kansas juries are typically instructed as to the law of aiding and abetting in codefendant cases, juries have not been asked to distinguish between a person's guilt as an aider and abettor as opposed to guilt as the principal. That distinction has not mattered to the guilt of the defendant. In discussing the enactment in 1969 of K.S.A. 21-3205, the Kansas Judicial Council Advisory Committee on Criminal Law commented:

> "This is intended to supersede K.S.A. 21-105, relating to principals in the second degree and accessories before the fact. There seems to be no reason to speak in terms of

10

principals in the first and second degrees and accessories before the fact where all are liable to the same extent." 10 Vernon's Kansas Stat. Annot., Crim Code §21-3205, Adv. Comm. Comment, p. 183 (1971).

All that has historically mattered is that the State proves each element of the crime and the defendant on trial played a willing role in the commission or furtherance of the crime as either the principal or as the aider and abettor. To be guilty under the theory of aiding and abetting, a defendant "must willfully and knowingly associate himself with the unlawful venture and willfully participate in it as he would in something he wishes to bring about or to make succeed." *State v. Schriner*, 215 Kan. 86, Syl. ¶ 6, 523 P.2d 703 (1974).

A reasonable interpretation of the evidence in this case is that Cato-Perry was both the principal and the aider and abettor, but as to different elements of the crime. Here, as in many codefendant cases, there was a division of responsibility between the assailants. Cato-Perry was the muscle, and his unidentified coassailant was the thief. Cato-Perry was the principal as to the element of force or threat of bodily harm, and the other assailant was the principal as to the taking of property from the person or presence of Uzzaman. They aided each other as to the elements for which they were not the principal actor. Between them, their conduct satisfied all elements of the crime of aggravated robbery. Such is the essence of accomplice liability.

Having concluded that aiding and abetting is an alternative means, the majority here has necessarily engaged in a sufficiency of the evidence analysis. In doing so, the majority has found the evidence to be lacking that Cato-Perry acted as the principal in this crime, and it has ordered a new trial. And this is the outcome in a case where the evidence plainly establishes that on June 25, 2007, in Wichita, two men acting in concert committed each and every element of the crime of aggravated robbery.

11

The majority's decision here, and the decision in *Boyd*, portend significant problems for the State in codefendant cases. As we have seen in this case, the specific actions of a codefendant do not always qualify the defendant as both the principal and aider and abettor. Given the division of responsibility that typically occurs in codefendant cases, it may be the rare case where the evidence will be sufficient to satisfy participation under both theories of liability. And yet, that is precisely what juries or appellate courts will now be required to analyze and determine in codefendant cases.

Before we extend the analytical structure of alternative means into the realm of aiding and abetting, we must interpret K.S.A. 21-3205(1) as compelling such a result. For over a century, our courts have not construed the aiding and abetting statute or its predecessor statutes to require verdict discernment between principals and aiders and abettors. The committee that drafted the current version of the aiding and abetting statute for enactment in 1969 saw no reason to discern between principals and accessories to a crime, as both were treated and punished the same. I do not believe *Timley* and *Wright* support or compel any different interpretation of the aiding and abetting statute at the present time.