NOT DESIGNATED FOR PUBLICATION

No. 121,450

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

K'VEION DARNELL RICHARD,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed September 10, 2021. Affirmed in part, reversed in part, and vacated in part.

*Kirsten B. Patty*, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ATCHESON, P.J., GARDNER and WARNER, JJ.


ATCHESON, J.:  This case arises from a home invasion in southwest Wichita. Three armed invaders were met with like force from one of the residents who emptied the seven-shot magazine of his pistol. In the gun battle, each of the intruders was hit, and the resident suffered what turned out to be a comparatively minor leg wound. Another resident immediately called 911 to report the incident, and a third resident described the getaway car to the responding law enforcement officers as a dark colored sedan.

1

Within minutes of the call, a dark colored Cadillac sped up to the emergency room of a Wichita hospital, deposited three men at the entrance, and drove away. Exterior security cameras at the hospital recorded their arrival. Each of the three, including Defendant K'veion Darnell Richard, had gunshot wounds. Richard had been shot in the face. In the emergency room, Richard offered investigating police officers conflicting accounts of how he had been shot and who brought him to the hospital.

The Sedgwick County District Attorney's office charged Richard with aggravated battery, aggravated burglary, two counts of aggravated assault, and two counts of criminal discharge of a firearm at an occupied dwelling. A jury heard evidence in the case in mid-November 2018. Richard did not testify during the trial. The jurors convicted him on all of the charges except aggravated battery; they could not reach a verdict on that charge. The district court later sentenced Richard to a controlling term of 56 months in prison for the aggravated burglary with a 36-month period of postrelease supervision, reflecting a midrange guidelines punishment. The district court imposed a guidelines sentence of 12 months in prison on each of the convictions for aggravated assault and criminal discharge of a firearm and ordered Richard to serve all four concurrently but consecutive to the 56-month sentence.

Richard has appealed and raises two issues: (1) the sufficiency of the evidence to support one of the convictions for criminal discharge of a firearm; and (2) the district court's decision to admit evidence of a trespass that occurred at the residence the night before the armed intrusion. As to the first, we find Richard's point well-taken and reverse that conviction. As to the second, we assume the district court erroneously admitted the evidence, but the error was harmless. Before we detail our analysis, we add some additional facts.

The armed incursion happened at a mobile home community on August 21, 2017, between 11 p.m. and midnight. The four occupants of the residence had retired for the

2

night, so the mobile home was dark inside. Two adult men had their own bedrooms, and a newly married couple had the third bedroom closest to the front door of the residence. The single man with the rearmost bedroom remained there throughout the brief intrusion and gun battle. The other single man heard knocking at the door, and when he undid the latch, three men pushed their way in. When the husband and wife heard a commotion, he crossed the threshold of the bedroom and fired his pistol. His wife saw some of what happened.

Because the house was dark, none of the occupants could positively identify any of the intruders. They described the three as young Black men wearing hoodies and other dark clothing. One of the intruders carried a .22 caliber assault-style rifle; one or both of the others had handguns. The residents believed Richard had the rifle, based on his general appearance and build.

The residents also believe one of the intruders fired the first shot, but everyone who was armed may have discharged a firearm inside the home. When the man with the rifle was shot, he dropped the gun and left it behind. The residents estimated the encounter lasted less than a minute. The occupant of the rear bedroom saw the gunmen flee and provided the general description of the getaway vehicle to the responding officers from the Wichita Police Department.

Crime scene investigators found five .45 caliber shell casings—from three manufacturers—outside the mobile home. They found two spent .22 caliber shell casings in the living room, and a third had jammed in the rifle. There were seven .45 caliber shell casings roughly at the bedroom door and a single .45 caliber casing in the living room area. The investigators identified what appeared to be numerous bullet holes in the mobile home.

The investigators determined that a bullet went through an exterior wall of the residence and penetrated the back wall of a mobile home on the lot immediately to the rear. The occupant of that mobile home heard the gunshots and called 911. He later described fearing for his family's safety and getting his wife and stepchildren on the floor.

*Criminal Discharge of a Firearm*

The jury convicted Richard of two counts of criminal discharge of a firearm, a felony violation of K.S.A. 2020 Supp. 21-6308(a)(1)(A) that, in pertinent part, criminalizes the "[r]eckless and unauthorized discharge of any firearm . . . [a]t a dwelling . . . in which there is a human being." One count pertained to the bullet that struck the nearby mobile home; Richard has not disputed that conviction on appeal.

Richard contends insufficient evidence supports the other conviction. On appeal, the State has offered alternative theories for that charge based either on Richard firing the rifle in the mobile home or on shots fired at the mobile home after the intruders left the premises in flight. The latter would impute criminal liability to Richard as an aider and abettor.

In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing in the district court, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

As to the first theory, Richard contends he could not be convicted of criminal discharge of a firearm for shooting the rifle *in* the mobile home because the statute proscribes shooting *at* a dwelling. The district court identified one of the elements of the crime in the jury instructions as: "The defendant discharged a firearm at a dwelling." The adequacy of the instruction itself is not at issue, since it conforms to the statutory language. The question is whether the evidence satisfied the statutory requirements of K.S.A. 2020 Supp. 21-6308(a)(1)(A).

We recently outlined the principles governing statutory review:

"When reviewing a statute, an appellate court must, as a first priority, strive to honor the legislative intent and purpose. *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014). The court should look to the words of the statute to discern that intent and purpose. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 725, 317 P.3d 70 (2014). Absent some specialized statutory definition, the words of a statute typically should be given their ordinary meaning. *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017). And dictionaries (not surprisingly) supply those meanings. 306 Kan. at 851. Consistent with the statutory language, criminal statutes should be construed strictly against the State and in favor of the accused. *State v. Coman*, 294 Kan. 84, 96, 273 P.3d 701 (2012); *State v. Bannon*, 55 Kan. App. 2d 259, 265, 411 P.3d 1236 (2018)." *State v. Baumgarner*, 59 Kan. App. 2d 330, 334-35, 481 P.3d 170, *rev. denied* 313 Kan. ___ (April 23, 2021).

See *State v. Smith*, 309 Kan. 929, 932-33, 441 P.3d 472 (2019).

Richard's argument pivots on the meaning of the word "at," as used in the statute. "At" is a preposition of protean definition. The word can mean "on" or "in" in reference to a location. Webster's New World College Dictionary 89 (5th ed. 2014) ("at" definition 1). For example, one might say, "I met him at the candy store." Morton, Barry, and Greenwich, "Leader of the Pack," Red Bird Records R.B. 10-014 (1964). That would mean inside the store or, perhaps, on the sidewalk at the entrance and would favor the

State's theory here. But "at" can also mean "to or toward as the . . . object," as in "don't shout at me." Webster's New World College Dictionary 89 (5th ed. 2014) ("at" definition 2). That definition would preclude the State's theory based on the discharge of the rifle inside the dwelling. The statutory language could mean either or both. The criminal code offers no specialized definition of "at" to be used in K.S.A. 2020 Supp. 21-6308 or elsewhere. To that extent, K.S.A. 2020 Supp. 21-6308(a)(1)(A) is ambiguous on its face.

Had the Legislature intended the State's meaning, we suppose it would have used the more precise preposition "in." But that narrow meaning would exclude drive-by shootings where a firearm is discharged into a dwelling from a passing car. And it would preclude prosecution when the shooter stands across the street or at some greater distance from the dwelling. We doubt the Legislature intended to criminalize such a constrained range of conduct. More naturally, shooting a weapon "at" something conveys the idea that the something is a target or object of the action. Had the Legislature intended to cover both, it easily could have identified the wrongful conduct as discharging a firearm *at or in* a dwelling. But it didn't. We should avoid adding something to a statute or negating something already there. See *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006) (statute should not be read to add language not found there); see also *Baumgarner*, 59 Kan. App. 2d at 335.

So with K.S.A. 2020 Supp. 21-6308(a)(1)(A), we have a criminal statute ripe with ambiguity on the critical issue in Richard's prosecution. In that circumstance, we are to apply the rule of lenity and give the ambiguous language a reasonable reading to the defendant's benefit. *State v. Gales*, 312 Kan. 475, 485, 476 P.3d 412 (2020); *State v. Baker*, 56 Kan. App. 2d 335, Syl. ¶ 3, 429 P.3d 240 (2018) ("The rule of lenity requires that language in criminal statutes open to more than one reasonable interpretation be applied to the defendant's advantage."). The rule of lenity undercuts the State's prosecution of Richard for criminal discharge of a firearm for shooting the rifle inside the residence.

Our conclusion is consistent with *State v. Farmer*, 285 Kan. 541, 546, 175 P.3d 221 (2008), in which the court recognized that K.S.A. 21-4219(b), a predecessor to K.S.A. 2020 Supp. 21-6308 that also criminalized "discharge of a firearm at an occupied dwelling," was "created to impose criminal liability where an individual discharges a firearm into an occupied building or vehicle." Although *Farmer* involved a defendant who shot at an occupied vehicle, the court's discussion of the identical statutory language bears on and bolsters Richard's argument here.

On appeal, the State alternatively suggests Richard could be convicted of criminal discharge of a firearm as an aider and abettor for the shots apparently fired from outside the residence, as evidenced by the .45 caliber shell casings found there. In K.S.A. 2020 Supp. 21-5210, the Legislature has codified two forms of aiding and abetting to extend liability to persons who do not directly participate in the charged crime. The statute, in pertinent part, provides:

> "(a) A person is criminally responsible for a crime committed by another if such person, acting with the mental culpability required for the commission thereof, advises, hires, counsels or procures the other to commit the crime or intentionally aids the other in committing the conduct constituting the crime.

> "(b) A person liable under subsection (a) is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person as a probable consequence of committing or attempting to commit the crime intended." K.S.A. 2020 Supp. 21-5210(a), (b).

Under paragraph (a), an individual may be liable for advising, hiring, or otherwise aiding someone else in committing a crime. For example, persons standing lookout for their criminal compatriots or serving as getaway drivers are guilty as aiders and abettors under Kansas law. See *State v. Gleason*, 277 Kan. 624, 634-35, 88 P.3d 218 (2004) (lookout); *State v. Burton*, 35 Kan. App. 2d 876, 880-81, 136 P.3d 945 (2006) (getaway

7

driver). Paragraph (b) imposes liability in a different way: A person joining with others to carry out a crime is also legally responsible for any additional crimes foreseeably committed during the illicit enterprise. See *State v. Boyd*, 46 Kan. App. 2d 945, 956-57, 268 P.3d 1210 (2011) (discussing comparable language in K.S.A. 21-3205, predecessor to K.S.A. 2020 Supp. 21-5210), *overruled on other grounds by State v. Betancourt*, 299 Kan. 131, 322 P.3d 353 [2014]). The pattern jury instruction on aiding and abetting liability incorporates the statutory language on each theory largely verbatim as separate paragraphs to be used as may be appropriate in a given case. PIK Crim. 4th 52.140 (2020 Supp.).

Here, the district court instructed the jurors: "A person is criminally responsible for a crime if the person, either before or during [its] commission, and with the mental culpability required to commit the crime intentionally aids another to commit the crime." The instruction conforms to language in PIK Crim. 4th 52.140 and draws directly on the theory of aiding and abetting liability outlined in K.S.A. 2020 Supp. 21-5210(a). In this case, the instruction applied to each charged crime the jury considered. At the streamlined on-the-record instruction conference, the State indicated it requested the limited version of PIK Crim. 4th 52.140 the district court intended to give and agreed to the instruction without reservation. Accordingly, the State elected to proceed on that theory of aiding and abetting liability.

The evidence established Richard discarded the rifle in the dwelling after he was shot and began to retreat. The shell casings outside correspond to shots his partners in crime fired during their flight, presumably to keep the armed resident at bay. There is no evidence to suggest the intruders fired shots into the dwelling as they entered. All of the evidence is to the contrary.

Richard—injured, disarmed, and fleeing—could not have aided the other two in discharging their firearms into the dwelling as all three retreated. Richard was, at most,

8

associated with them when they committed that crime, an affiliation that is not enough to support aiding and abetting on the State's theory. See *State v. Llamas*, 298 Kan. 246, 260, 311 P.3d 399 (2013). The jury instruction conformed to that principle of criminal liability and the recommendation in *Llamas* that the "better practice" is to so instruct jurors. 298 Kan. at 261-62. The evidence, then, did not support convicting Richard on the State's aiding and abetting theory.

The State did not pursue an aiding and abetting theory based on Richard's participation in the aggravated burglary when he entered the residence with his cohorts and, thus, aided or otherwise participated in that crime. Under the principle of criminal liability codified in K.S.A. 2020 Supp. 21-5210(b), Richard, in turn, could have been liable for the others' criminal conduct in shooting at the residence as they fled as a "reasonably foreseeable . . . consequence" of the burglary. We cannot appropriate a theory never submitted to the jury to uphold a conviction, since we would be substituting our judgment for whatever the jury might have decided to find a defendant guilty. See *State v. Watt*, No. 121,266, 2020 WL7413773, at *4 (Kan. App. 2020) (unpublished opinion); accord *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (A criminal defendant's right to jury trial guaranteed in the Sixth Amendment to the United States Constitution "includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.'").

We, therefore, conclude the State presented insufficient evidence to support one of Richard's convictions for criminal discharge of a firearm. The appropriate remedy requires we reverse that conviction, vacate the corresponding sentence, and enter a judgment of acquittal on the charge. See *Baumgarner*, 59 Kan. App. 2d at 341. Because of the concurrent sentences the district court imposed on Richard, we need not remand for resentencing or any other purpose.

9

*District Court's Evidentiary Ruling*

During the evening of August 20, 2017—the day before the armed invasion—three Black men entered the mobile home through the unlocked front door. The husband and wife interceded, and the trio quickly left. Before the trial, the State requested an order from the district court to admit testimony about the August 20 entry and represented that the husband and wife could make positive identifications of Richard as having been one of the three people and would testify the intruder carrying the rife on August 21 had the same general appearance and build as Richard. On that basis, the district court granted the State's request. The State's proffer probably established a foundation to admit the August 20 entry under K.S.A. 2020 Supp. 60-455(b) as evidence of Richard's identity—the linchpin issue—and possibly of a common scheme or plan and preparation.

In their trial testimony, however, neither the husband nor the wife could say that Richard entered their residence on August 20 or on August 21. They disclaimed getting a good look at the facial features of any of the men who came in either day. All they could tell the jurors was several young Black men entered the house without permission on August 20, a man with the same general appearance and size as one of them forced his way in the next night along with two other intruders, and Richard was of the same race and of a similar age and physique. We believe that trial testimony was sufficiently indefinite to call into question the August 20 incident as admissible evidence tending to prove Richard's participation in the August 21 home invasion. See *State v. Boysaw*, 309 Kan. 526, 541, 439 P.3d 909 (2019) (In weighing the admissibility of evidence under K.S.A. 60-455, the district court should consider, among other factors, the clarity of proof of the other crime or civil wrong to be introduced and how probative it may be of the material issue.).

Here, the material issue was the identity of Richard as one of the August 21 home invaders. The State assembled circumstantial evidence supporting his participation, even

10

though none of the residents could make an in-court eyewitness identification of Richard as one of the gunmen. Richard did bear a general physical resemblance to one of the three intruders. At least two of the intruders were shot and a few minutes later, a car deposited three men with gunshot wounds at a local hospital. The car matched the description of the getaway vehicle. Richard immediately gave demonstrably inconsistent accounts to police as to how he was shot. See *United States v. Stoney End of Horn*, 829 F.3d 681, 687 (8th Cir. 2016) (defendant's inconsistent explanations for otherwise inculpatory circumstances are themselves indicative of guilt); *State v. Yoksh*, 989 S.W.2d 227, 233 (Mo. Ct. App. 1999) (shifting explanations evidence of plan to conceal guilt); *Sumpter v. State*, No. 117,732, 2019 WL 257974, at *9 (Kan. App.) (unpublished opinion) (demonstrably false exculpatory statement constitutes evidence tending to establish guilt), *rev. denied* 310 Kan. 1071 (2019).

All of that evidence also tends to suggest Richard might have been one of the three unidentified men who entered the mobile home without permission on August 20. But whether Richard did so is not itself a material issue in the case, since he faced no criminal charges for the August 20 incident. Conversely, evidence that an unidentified young Black man who was similar in appearance to Richard barged into the residence on August 20 is not really probative of who invaded the premises the next day or, more particularly, that Richard did. In short, the inexact evidence about who participated in the August 20 entry may well render the incident irrelevant in the sense the information makes it neither more likely true nor less likely true that Richard joined in the August 21 home invasion. See *State v. Davis*, 312 Kan. 259, 276, 474 P.3d 722 (2020); *City of Leawood v. Puccinelli*, 56 Kan. App. 2d 108, 118, 424 P.3d 560 (2018); *State v. Otero*, No. 114,762, 2017 WL 4183208, at *6 (Kan. App. 2017) (unpublished opinion) ("Relevant evidence makes a disputed, material fact either more likely or less likely true.").

Without a firm eyewitness identification of Richard as one of the men entering the mobile home on August 20, the incident seems to lack the clarity and probativeness, as

11

outlined in *Boysaw*, to be admitted as 60-455 evidence of identity of any of the participants in the armed invasion the next night. Rather, the evidence from August 21 tends to show Richard was there on August 20—not the other way around. We, therefore, assume without deciding the district court erred in permitting the jury to consider testimony about the August 20 incident.

The question remains, however, whether the assumed error in admitting that evidence substantially prejudiced Richard. *State v. Claerhout*, 310 Kan. 924, 931, 453 P.3d 855 (2019) (admission of 60-455 evidence subject to review for harmless error). Because any error undercuts a statutory right of Richard, the State, as the benefited party, must demonstrate there is no reasonable probability the wrongfully admitted evidence affected the outcome of the trial in light of the record as a whole. *State v. McCullough*, 293 Kan. 970, 981-82, 270 P.3d 1142 (2012); *State v. Brown*, 58 Kan. App. 2d 599, 617, 473 P.3d 910 (2020).

Here, we have little difficulty concluding any evidentiary error to be harmless precisely because the circumstances of the August 20 incident are irrelevant to proving Richard's identity as one of the gunmen and, hence, his guilt or innocence. The trial testimony from the husband and wife about the August 20 entry neither advanced the State's proof that Richard participated in the August 21 armed intrusion nor impaired Richard's defense. That testimony may appropriately be characterized as inconsequential on the crucial point—Richard's identity—and added nothing substantive to the circumstantial evidence properly admitted based on what happened on August 21 at both the residence and the hospital. We have no doubt the jury would have come to the same conclusions had the district court disallowed the testimony.

Having considered both points Richard has raised, we reverse his conviction for one count of criminal discharge of a firearm, vacate that sentence, and enter a judgment of acquittal on that charge. We otherwise affirm Richard's convictions and sentences.

12

Affirmed in part, reversed in part, and vacated in part.